UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :

UNITED STATES OF AMERICA,              :

                                                           :

               -v-                                :                19 Cr. 672 (JPC)
                                                            :               20 Civ. 7835 (JPC)
                                                             :

ANDREW VALLES,                            :             <u>OPINION AND ORDER</u>
                                                               :

                           Defendant.                  :

                                                            :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Defendant Andrew Valles moves under 28 U.S.C. § 2255 to vacate his conviction for

traveling in interstate commerce and knowingly failing to register as a sex offender, in violation

of 18 U.S.C. § 2250, arguing that he received ineffective assistance from his counsel.  Because the

Court determines that Valles's counsel's performance did not fall below an objective standard of

reasonableness and that Valles has not identified any prejudice, the Court denies his motion.

## I.  Facts and Procedural History

      On October 12, 2004, Valles pleaded guilty in Utah state court of two counts of lewdness

involving a child and two counts of attempted dealing in harmful material to a minor.  Dkt. 13[1]

("PSR") ¶¶ 7, 29.  Upon completion of his term of imprisonment for those convictions in July

2006, *id.* ¶ 8, Valles was required to register as a sex offender biannually for the subsequent ten

years with the Utah Sex and Kidnap Offender Registration Program, *id.* ¶ 10, and as of August 1,

2008, to register as a sex offender in any jurisdiction where he resides under the Sex Offender

---

[1] Unless otherwise indicated, all docket citations refer to the docket in the underlying criminal matter, *United States v. Valles*, No. 19 Cr. 672 (JPC) (S.D.N.Y.).

Registration and Notification Act ("SORNA"), 34 U.S.C. § 20913(a); *see United States v. Lewis*, 768 F.3d 1086, 1095 (10th Cir. 2014); *see also United States v. Gundy*, 804 F.3d 140, 143 (2d Cir. 2015).  While Valles initially registered in Utah on July 10, 2006, PSR ¶ 10, he thereafter failed to register or update his registration information despite traveling to various states including New York, *id.* ¶¶ 12-13.  Valles resided in New York from July 2016 until May 3, 2018, Dkt. 11 ("9/13/19 Plea Hearing Tr.") at 15:18-20, when he was arrested on a warrant arising from a 194-count indictment in California that charged Valles for his alleged involvement in a mortgage fraud advance scheme and a "bankruptcy dumping" scheme, PSR ¶¶ 11, 39-40.

A sealed complaint against Valles was filed in this District on June 1, 2018, alleging one count of violating 18 U.S.C. § 2250 for traveling in interstate commerce and knowingly failing to register and update a registration as required under SORNA.  Dkt. 1.  A few months after the filing of that sealed federal complaint, Valles pleaded guilty to numerous crimes in the California case on August 27, 2018.  PSR ¶ 37.  He was then sentenced to thirteen years' imprisonment on May 15, 2019.  *Id.*  While in California state custody, Valles was arrested on the failure to register charge in this case, and he arrived in this District in late July 2019.  *See* July 31, 2019 Minute Entry; PSR ¶ 14.

On September 13, 2019, Valles waived his right to be charged by indictment, Dkt. 10, and pleaded guilty before the Honorable William H. Pauley III to a criminal information that charged him with traveling in interstate commerce and knowingly failing to register under SORNA from at least July 2006 through May 2018 in violation of 18 U.S.C. § 2250.  *See* 9/13/19 Plea Hearing Tr.; Sept. 13, 2019 Minute Entry.  When asked by Judge Pauley at the plea hearing whether he was satisfied by his attorneys' representation, Valles responded: "Absolutely.  Yes."  9/13/19 Plea

Hearing Tr. at 5:25-6:3.  Later during the proceeding, Valles explained his criminal conduct as follows:

> From July 2006 through July 2016[,] I was required to register as a sex offender.  I traveled across state lines to California and to New York -- and Manhattan, New York . . . during this time period and knowingly failed to register and update my registration.  I knew that failing to register was against the law.  And . . . I apologize. I'm very sorry.

*Id.* at 14:21-15:2. Valles then added that from July 2016 until his arrest on May 3, 2018, he was residing in Manhattan.  *Id.* at 15:18-20.  At the plea hearing, the Assistant United States Attorney also summarized the Government's proof were the case to proceed to trial, which she explained consisted of "lay and law enforcement witness testimony to establish the defendant's residency in multiple states, including in Manhattan, a videotaped postarrest statement of the defendant, and court documents and a criminal history record from the defendant's prior conviction."  *Id.* at 16:7-12.

On December 20, 2019, Judge Pauley sentenced Valles to nine months' imprisonment, to be served consecutive to his California term of imprisonment, as well as five years of supervised release.  Dkt. 16 at 2; Dkt. 17 ("12/20/19 Sentencing Tr.") at 17:5-9.  This sentence reflected a downward variance from the advisory range under the U.S. Sentencing Guidelines of 15 to 21 months' imprisonment, which range entailed a two-level reduction of Valles's offense level pursuant to U.S.S.G. § 3E1.1(a) for accepting responsibility.  *See* 12/20/19 Sentencing Tr. at 14:7-14.  Toward the end of the proceeding, Judge Pauley commended Valles's attorney for having "done an excellent job in representing [Valles] in this matter."  *Id.* at 23:5-6.

On September 23, 2020, Valles moved to vacate his conviction pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel.  Dkt. 19 ("Motion").  The Government opposed that motion on November 24, 2020.  Dkt. 21 ("Opposition").  After the Court granted Valles an

extension of time to respond to that opposition and denied his request for appointment of counsel, Dkt. 27, Valles filed a response in further support of his motion on April 27, 2021, Dkt. 28 ("Reply").  This case was reassigned to the undersigned on July 28, 2021.  Dkt. 29.  On June 1, 2023, the Court ordered additional briefing as to its jurisdiction in this case.  Dkt. 37.  The Government filed a letter brief in response to that Order on June 20, 2023.  Dkt. 38.  Valles filed a letter brief in response to that Order on June 22, 2023.[2]  Dkt. 39.

## II.  Legal Standard

Under 28 U.S.C. § 2255(a), a prisoner in custody for a federal sentence[3] may move for the sentence to be vacated, set aside, or corrected on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  The prisoner may gain such relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that

---

[2] Valles's letter brief also requested a stay of this case pending the resolution of other proceedings that he is pursuing in other courts.  Dkt. 39 at 3.  For the reasons stated in the Court's previous Order denying a stay, Dkt. 34, that request is denied.

[3] Despite the fact that Valles currently remains in state custody, with his federal sentence to commence upon completion of his state term, the Court has jurisdiction to resolve this habeas petition.  *See, e.g.*, *Green v. United States*, 415 F. Supp. 3d 338, 341 (W.D.N.Y. 2019) ("Courts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence and thus are subject to the § 2255 statute of limitations." (brackets omitted) (quoting *Perry v. Warden Fort DIX FCI*, 609 F. App'x 725, 727 (3d Cir. 2015)); *United States v. Mercedes*, No. 90 Cr. 450 (RWS), 1997 WL 122785, at *2 (S.D.N.Y. Mar. 17, 1997) ("The fact that [a defendant] is in state custody, rather than federal custody, is irrelevant. A petitioner . . . whose federal sentence is to be served upon completion of a state sentence he is still serving and who has not as yet commenced his federal sentence, satisfies the custody requirements of Section 2255 governing motions to set aside or correct a federal sentence."); *see also U.S. ex rel. Meadows v. State of N.Y.*, 426 F.2d 1176, 1179 (2d Cir. 1970) (in addressing a habeas appeal involving a state conviction, explaining that "although [the petitioner] is not presently serving [the anticipated] sentence" that he seeks to challenge, "[t]he writ may be employed to contest the validity of future as well as present restraints").

4

constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"
*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424,
428 (1962)). Additionally, the Court must "construe *pro se* pleadings liberally and interpret them
'to raise the strongest arguments they *suggest*.'" *Rahmankulov v. United States*, Nos. 23 Civ. 3206,
20 Cr. 653 (RA), 2023 WL 3303949, at *1 (S.D.N.Y. May 8, 2023) (quoting *Triestman v. Fed.*
*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation
marks and citations omitted); *accord Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir.
2014).

### III.  Discussion

#### A.    Evidentiary Hearing

In resolving a motion under section 2255, the district court must hold a hearing "[u]nless
the motion and the files and records of the case conclusively show that the prisoner is entitled to
no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir.
2013). Because "the filing of a motion pursuant to § 2255 does not automatically entitle the
movant to a hearing" as "that section does not imply that there must be a hearing where the
allegations are vague, conclusory, or palpably incredible," "[t]o warrant a hearing, the motion must
set forth specific facts supported by competent evidence, raising detailed and controverted issues
of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 130-31
(internal quotation marks omitted). "In determining whether the assertions in a § 2255 motion
warrant discovery or a hearing, the court must also take into account admissions made by the
defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption
of verity.'" *Id.* at 131 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "[I]t is within the
district court's discretion to determine the scope and nature of a hearing," as well as "to determine

whether to hold a hearing, or to elect to investigate facts outside the record without the personal presence of the movant." *Sessum v. United States*, Nos. 18 Civ. 6222 (KPF), 15 Cr. 667 (KPF), 2020 WL 1243783, at *6 (S.D.N.Y. Mar. 16, 2020).

In this case, the Court determines that "[t]he combined submissions of the parties provide a sufficient basis upon which to deny the [motion], and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its views on the facts alleged by [Valles]." *Pinhasov v. United States*, Nos. 16 Civ. 7349 (KBF), 14 Cr. 670 (KBF), 2018 WL 550611, at *2 (S.D.N.Y. Jan. 22, 2018) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)). Therefore, an evidentiary hearing is not necessary to resolve Valles's motion.

## B.      Ineffective Assistance of Counsel

The Sixth Amendment provides that a criminal defendant shall "have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for determining whether a criminal defendant was denied that right. "To prevail on a claim of ineffective assistance of counsel, a convicted defendant must demonstrate that: (1) counsel's performance 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rosas v. Artus*, No. 05 Civ. 8440 (RJS), 2013 WL 499610, at *4 (S.D.N.Y. Jan. 29, 2013) (quoting *Strickland*, 466 U.S. at 688, 694). Further "[t]he law is clear that a petitioner challenging his conviction on the grounds of ineffective assistance of counsel '[bears] the burden of proving his claim.'" *Johnson v. United States*, No. 11 Cr. 487 (RJS), 2018 WL 4625799, at *3 (S.D.N.Y. Sept. 26, 2018) (quoting *Chang*, 250 F.3d at 86).

While assessing whether counsel's performance fell below an objective standard of reasonableness, the Court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).   In determining whether counsel's failure to alert his client to a particular possible defense falls below an objective standard of reasonableness, the Court must look to the likelihood that that defense would succeed.   *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (holding that a failure of counsel to advise his client of an available defense during plea discussions did not fall below the objective standard of reasonableness because the defense was unlikely to succeed and "would have exposed [the defendant] to significant additional punishment while only providing the potential for a reduction in prison time relative to the plea").

To satisfy the second *Strickland* prong of prejudice, a defendant who pleaded guilty must establish that he would have gone to trial if not for defense counsel's alleged ineffectiveness.   *See Agramonte v. United States*, No. 15 Cr. 176 (KMK), 2020 WL 1445651, at *6 (S.D.N.Y. Mar. 25, 2020) (citing *United States v. Arteca*, 411 F.2d 315, 320 (2d Cir. 2005)).   The "assessment of whether the defendant would have gone to trial but for counsel's errors 'will depend largely on whether the affirmative defense likely would have succeeded.'"   *Panuccio*, 927 F.2d at 109 (quoting *Hill*, 474 U.S. at 59).   Moreover, "this prong of the inquiry is not satisfied merely by [defendant's] testimony that he would have gone to trial had he known of the defense . . . since a defendant's testimony after the fact 'suffers from obvious credibility problems.'"   *Id*. (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988)).

Because, as discussed *infra*, Valles pleaded guilty and now claims that his counsel was ineffective for failing to inform him of various "defenses" he might have pursued at trial instead of entering a guilty plea, resolving either prong of Valles's ineffective assistance claim requires assessing the merit of those potential "defenses."

Valles asserts three grounds of ineffective assistance, as discussed *infra*. In claiming resulting prejudice, Valles relies only on his own statements that he would have gone to trial had he known of any of these grounds at the time of his September 13, 2019 guilty plea. As such statements alone are insufficient to demonstrate prejudice, *Panuccio*, 927 F.2d at 109, the Court considers whether any of the defenses or arguments not pursued were viable. For reasons that follow, the Court determines that none of Valles's claimed available defenses were tenable, and that any suppression motion would have been unlikely to succeed or would not have been dispositive. Accordingly, Valles has not established that even if he had been informed of these grounds to challenge his culpability, he would have opted to proceed to trial.[4]

### 1.      Legal Defenses

Valles's first two asserted grounds of ineffective assistance point to legal arguments challenging the viability of the SORNA charge. The first seems to suggest that the statute's delegation of authority to the Attorney General to determine the applicability of the statute to offenders convicted before its enactment was an unconstitutional delegation of congressional power. As to the second, Valles similarly contends that he should not have been subject to SORNA

---

[4] Because ultimately it does not affect the outcome of this petition, the Court assumes throughout this Opinion and Order that Valles's attorneys in fact did not inform him of the defenses as Valles claims. There is good reason to doubt this position, at least as to Valles's first asserted ground, as his reply brief acknowledges that he and his counsel discussed *Gundy v. United States*, 139 S. Ct. 2116 (2019). Reply at 5 (contending that one of his attorneys "(on July 31, 2019), stated, after [Valles] inquired about *Gundy* and a defense strategy, 'unless you can change the law, there is nothing we can do,'" and that his other attorney "agreed").

given the date of his conduct that gave rise to his conviction under 18 U.S.C. § 2250.  Both defenses, if asserted, would have lacked merit—and in fact are foreclosed by Supreme Court precedent—and thus provide no basis to find ineffective assistance.

### a.    Appeal Based on the Constitutionality of SORNA

First, Valles argues that "it was incumbent upon legal counsel to advise [Valles] not to plead guilty when going to trial left upon a reserved, exceptional affirmative defense during those proceedings, and upon appeals in order to request certiorari for consideration of a final opinion to the question."  Motion at 17.  The "question" to which he refers is "whether 34 U.S.C. § 20913(d) violates the separation-of-powers clause of the Constitution," *id.*, a position embraced by the dissent in *Gundy.  See Gundy*, 139 S. Ct. at 2131-48 (Gorsuch, J., dissenting).  Section 20913 is a provision of SORNA that imposes the statute's sex offender registration requirements, and section 20913(d) in particular grants the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with" the initial registration requirements.   34 U.S.C. § 20913(d).   Valles argues that had he known of this "defense" of challenging the constitutionality of section 20913(d), he would not have pleaded guilty, but instead would have proceeded to trial and, if convicted, would have raised the issue on appeal to the Second Circuit and then to the Supreme Court.  Motion at 17.

The Supreme Court decided *Gundy* on June 20, 2019, less than three months before Valles's guilty plea before Judge Pauley.  At issue in *Gundy* was whether the nondelegation doctrine—which prevents Congress from transferring its legislative power to another branch—renders 34 U.S.C. § 20913(d) unconstitutional.  *Gundy,* 139 S. Ct. at 2121; *see also* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States,

which shall consist of a Senate and House of Representatives."). Justice Elena Kagan, writing the plurality opinion, noted that the Court has "held, time and again, that a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Gundy*, 139 S. Ct. at 2123 (internal quotation marks and brackets omitted). Applying this standard, Justice Kagan concluded that the delegation in section 20913(d) passes constitutional muster. *Id.* at 2129-30. Justice Alito, concurring, expressed an interest in revisiting the Court's approach to the nondelegation doctrine in the appropriate case, but voted to affirm because he could not conclude that SORNA lacks a discernible standard. *Id.* at 2130-31 (Alito, J., concurring).

To have secured an acquittal on the ground that SORNA is an unconstitutional delegation of congressional power, Valles would have needed to (following trial and appeal to the Second Circuit) obtain a writ of *certiorari* from the Supreme Court and then prevail in that forum, an outcome that would have required the Court to reverse direction immediately after upholding the constitutionality of SORNA in *Gundy.* And even in the unlikely event that the Supreme Court would have granted *certiorari* so soon after deciding this very issue, this Court cannot deem a defense likely to prevail when it relies on a legal conclusion at odds with current Supreme Court law. The failure to warn a client of a meritless defense is not ineffective assistance. The Court therefore determines that any failure of counsel to inform Valles of the possibility of challenging SORNA's constitutionality did not fall below an objective standard of reasonableness, and additionally determines that Valles has not shown prejudice as he cannot credibly claim that he would have gone to trial had he known of the possibility of such a forlorn appeal, particularly where it may have caused him to lose the sentencing benefit for accepting responsibility.

b.      **Appeal on the Basis of *Reynolds***

Second, Valles argues that counsel failed to advise him "of an affirmative defense to challenge on direct attack the Government's position courtesy of *Reynolds* [*v. United States*, 565 U.S. 432] (2012) and *Mattix* (2012)[5], which—in concert—provide no pre-SORNA subject can be punished for violations that occurred before the Government (Attorney General of the United States) issued retroactivity rules made effective on 01 August 2008." Motion at 18.  Based on Valles's reply brief, he seems to argue that, because he began traveling interstate after his release from custody in Utah in 2006, the conduct underlying his conviction began in 2006 and thus constitutes a violation occurring before the Attorney General issued retroactivity rules in 2008. Reply at 32.  Valles again insists that had he known of this "defense," he would have gone to trial rather than plead guilty.  Motion at 18.

Any appeal based on Valles's apparent understanding of the import of *Reynolds* would have been meritless.  As just discussed, SORNA grants the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction."  34 U.S.C. § 20913(d).  At issue in *Reynolds* was whether SORNA's registration requirements applied to offenders convicted before SORNA's enactment in July 2006.  *Reynolds*, 565 U.S. at 434. *Reynolds* held that SORNA's "registration requirements do not apply to pre-Act offenders until the Attorney General specifies that they do apply." *Id*. at 435.  SORNA became applicable to pre-

---

[5] While not entirely clear, when referencing "*Mattix* (2012)," Valles seems to be referring to the Ninth Circuit's decision in *United States v. Mattix*, 694 F.3d 1082 (9th Cir. 2012).  Because the court in *Mattix* merely reaffirmed the Ninth Circuit's prior holding that SORNA became retroactive on August 1, 2008 when the Attorney General's interpreting and implementing guidelines became final, *id*. (citing *United States v. Valverde*, 628 F.3d 1159 (9th Cir. 2010)), *Mattix* is of no help to Valles for reasons that follow.

Act offenders, like Valles, on August 1, 2008, thirty days after final guidelines promulgated by the Attorney General were published.  *See Lewis*, 768 F.3d at 1095; *Gundy*, 804 F.3d at 143.

Valles does not appear to contest that he was subject to SORNA's registration requirements after August 1, 2008, and his registration obligation under SORNA continued for at least fifteen years after his release from state imprisonment in 2006.  34 U.S.C. § 20915(a)(1); *see also Lewis*, 768 F.3d at 1095 ("SORNA became retroactively applicable to pre-Act offenders in August of 2008."); *Gundy*, 804 F.3d at 148 (holding that the defendant who had committed a 2005 state offense was initially required to register under SORNA on August 1, 2008).  At his change of plea hearing, Valles allocuted that he had resided in New York from July 2016 through May 2018, 9/23/19 Plea Hearing Tr. at 15:18-20, that he traveled across state lines to New York, *id.* 14:22-24, and that he failed to register or update his registration during that period, *id.* at 14:24-25.  Upon the beginning of his residence in New York in July 2016, Valles was required to register.  *See* 34 U.S.C. § 20913(c) ("A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.").  The Supreme Court's holding in *Reynolds* therefore would have provided no viable basis for Valles to challenge his conviction, and any failure of his counsel to advise him of *Reynolds* did not fall below an objectively reasonable standard.  And here too, the failure of counsel to urge him to pursue such an argument, predicated on a mistaken legal theory, did not cause Valles any prejudice.

* * *

In sum, even crediting Valles's contentions regarding advice he received, and did not receive, from his prior counsel, it is clear that counsel declined to inform Valles of futile legal

challenges that were foreclosed by Supreme Court precedent.  Instead, defense counsel apparently made the tactical decision of seeking a quick resolution of this case, which resulted in Valles receiving credit against his Guidelines range for accepting responsibility and also ultimately led to a significantly below-Guidelines sentence.  Counsel's decision to proceed in this manner rather than to inform Valles of those futile challenges was far from ineffective.  Nor can Valles claim he was prejudiced by his attorney's conduct, as he cannot credibly state that he would have forsaken his guilty plea in order to pursue such a doomed strategy.

### 2.   Advice Concerning Motions to Suppress

Third and finally, Valles argues that his counsel failed to advise him that he could have moved to suppress a self-incriminating statement that he made to law enforcement and the contents of two cell phones and other items seized from him at the time of arrest.  Motion at 19.  As to the statement, Valles claims that the arresting officers with the U.S. Marshals Service "omitted to state in their recitation of" his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), that Valles had "the 'right to have an attorney present during [any] questioning,'" Motion at 18 (alteration in original), and further contends his attorney failed to advise him "that case law . . . established ample grounds to suppress and object to the use and admission of an 'audiovisual' recording" of his post-arrest interrogation, *id.*  As for the evidence recovered at his arrest, Valles claims that the items were unlawfully seized and that his counsel failed to advise him that a warrant would be required for law enforcement to inspect their contents.  *Id.*

When bringing an ineffective assistance of counsel claim for failure to seek suppression of evidence, "*Strickland* requires that a [petitioner] show that: (1) a competent attorney would have made the motion; (2) the suppression motion would have been successful; and (3) the outcome of the proceeding would have been different absent the excludable evidence."  *Watson v. Crowley*, No. 07 Civ. 1111 (RJS) (RLE), 2011 WL 4639814, at *4 (S.D.N.Y. May 10, 2011), *report and*

*recommendation adopted by* 2011 WL 4639812 (S.D.N.Y. Oct. 6, 2011).  Valles cannot make this

showing with respect to either piece of evidence.

Starting with his attorney's failure to move to suppress his post-arrest statement, Valles

contends that the arresting officers violated his *Miranda* rights because they "omitted to state in

their recitation of *Miranda* to [Valles] the 'right to have an attorney present during [any]

interrogation.'"  Motion at 19 (second alteration in original).  Valles's motion also references a

video of his post-arrest statement.  *See id.*  That video, however, clearly contradicts his claim that

he was not informed of his right to have counsel present at his questioning, as it reveals that a law

enforcement officer advised Valles:

> Before we ask you any questions, it is my duty to advise you of your rights.  You
> have the right to remain silent.  Anything you say can and will be used against you
> in a criminal proceeding.  *You have the right to talk to a lawyer for advice before
> we ask you any questions and . . . have him with you during questioning.*  If you
> cannot afford a lawyer one will be appointed for you if you wish before any
> questioning begins.  If you decide to answer questions now without a lawyer
> present, you still have the right to stop answering at any time.  You also have the
> right to stop answering at any time until you talk to a lawyer.

Opposition, Exh. A at 4:15-44 (emphasis added).  Valles then confirmed that he understood his

rights and was willing to speak with the officer.  *Id.* at 4:44-5:03.  Further, to the extent that Valles's

citations to caselaw that he believes support suppression of the video of that interview—

specifically, *Arizona v. Fulminante*, 499 US. 279 (1991), *Campos v. Stone*, 201 F. Supp. 3d 1083

(N.D. Cal. 2016), *Colorado v. Connelly*, 479 U.S. 157 (1986), *Frazier v. Cupp*, 394 U.S. 731

(1969), *Lego v. Twomey*, 404 U.S. 477 (1972), *Moran v. Burbine*, 475 U.S. 412 (1986),

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and *Miranda*, Motion at 19—imply that his

attorney should have argued that his post-arrest statement was coerced, Valles presents no

argument justifying that conclusion other than his flawed claim that he was not informed of his

right to counsel.  Nor is there any indication of coercion in the video itself.

Given that the recording of Valles's post-arrest interview makes clear that he was advised of his right to have an attorney present for any law enforcement questioning and confirmed that he understood that right, Valles has not shown either that a competent attorney would have advised him to move to suppress that statement, or that such a motion would have had any chance of success.  Because such a motion to suppress was sure to fail, Valles's attorney was not required to advise him of the possibility of filing one and Valles cannot credibly claim any prejudice from his attorney's failure to do so.

Valles's claim that his attorney rendered ineffective assistance by not seeking suppression of the two phones and other property seized from him at the time of his arrest also fails, but for different reasons.  As an initial matter, Valles does not contend that he would have proceeded to trial had his counsel sought suppression of this evidence.  Moreover, even if such a motion to suppress had been made and been successful in whole or part, the question then becomes whether a successful motion would have altered Valles's decision to plead guilty at the time.  The Government, however, represents in opposing Valles's motion that its anticipated trial proof against Valles did not include any of the evidence recovered at the time of his arrest, Opposition at 16, and similarly suggested at the time of Valles's guilty plea that it did not intend to offer that evidence at any trial, *see* 9/13/19 Plea Hearing Tr. at 16:5-12 (the Assistant United States Attorney responding to Judge Pauley's request that she summarize the prosecution's evidence against Valles and not mentioning the phones or other items seized at the time of his arrest).

This is not surprising given the relatively limited and straightforward elements of a violation of 18 U.S.C. § 2250, the sole crime that Valles was charged with committing.  To establish Valles's guilt of this offense, the Government needed to prove beyond a reasonable doubt three elements: (1) Valles was required to register under SORNA; (2) Valles traveled in interstate

or foreign commerce; and (3) Valles knowingly failed to register or update a registration as required by SORNA.  18 U.S.C. § 2250.  Notably, when asked by Judge Pauley at Valles's plea hearing to summarize the Government's evidence, the Assistant United States Attorney did not mention any of the items seized at the time of Valles's arrest.  *See* 9/13/19 Plea Hearing Tr. at 16:5-12.  Rather, the Assistant United States Attorney identified three categories of evidence that would appear to sufficiently meet each of the elements to establish Valles's guilt for violating 18 U.S.C. § 2250: (1) judicial documents and Valles's criminal history establishing his prior commission of a sex offense requiring his registration under SORNA[6]; (2) testimony from lay and law enforcement witnesses establishing that Valles resided in multiple states, including in the Southern District of New York; and (3) Valles's post-arrest statement.  *Id.*  As such, suppression of the items seized from Valles at the time of his arrest—which the prosecutors apparently did not intend to rely on at trial and would not have been needed to establish Valles's guilt—likely would have had no bearing on the outcome of this case.  Indeed, Valles does not contend that the Government's evidence against him, after taking out the evidence recovered at the time of his arrest, was insufficient for a conviction such that he would not have pled guilty.  As Valles therefore cannot show prejudice as to any failure to advise him regarding such a suppression motion, this ground for ineffective assistance fails as well.

## IV.  Conclusion

For the aforementioned reasons, Valles's motion is denied in its entirety.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 19 and to close the

---

[6] The Government further alleged in the criminal complaint, which was sworn by a Deputy United States Marshal, that, on or about July 10, 2006, around the time of Valles's release from state custody, Valles signed a Utah State Sex Offender Registration Form, in which he confirmed that he had been notified of his responsibility to register as a sex offender.  Dkt. 1 ¶ 3(c).

case with docket number 20 Civ. 7835.  A certificate of appealability shall not be granted, because

Valles has not made a substantial showing of a denial of a federal right.  *See Hoffler v. Bezio*, 726

F.3d 144, 154 (2d Cir. 2013).

      SO ORDERED.

Dated: July 10, 2023
     New York, New York

                                   JOHN P. CRONAN
                            United States District Judge