The Government shall file any response to Valles's filing by August 21, 2023.  Valles may file a reply by September 5, 2023.

1  Andrew Valles
   CDCR No. BJ6191
2  Fed. Reg. No. 86990-054
   CIM (C-A-212 up)
3  P.O. Box 500
   Chino, CA 91708
4
   Pro Se/IFP
5

SO ORDERED.
Date: August 7, 2023
New York, New York

JOHN P. CRONAN
United States District Judge

6         UNITED STATES DISTRICT COURT

7         SOUTHERN DISTRICT OF NEW YORK

8

9  Andrew Valles,                    Case No. 20-CV-7835, and

10         Petitioner/Defendant,      19-CR-0672

11  v.
                                  OBJECTION TO ORDER; MOTION
12  United States of America,     FOR RECONSIDERATION; PLEADING
                                  BRIEF OF PETITIONER AND/OR APPELLANT
13         Respondent/Plaintiff.

                                  25 July 2023
14

15         PROCEEDING BY RULE

16

17    This Objection to Order ("Objection") proceeds under Fed. R.

18  Civ. Proc. Rule 46, and/or this Motion to Reconsider ("Motion")

19  proceeds under Fed. R. Civ. Proc. Rule 60(a), (b)(1) and/or (b)(6);

20  and this Objection and Motion ("O&M") has been filed timely

21  within 28 days or 1-year of the 10 July 2023 Opinion and

22  Order ("Order")(Doc. 21)(see "Exhibit 5-A" attached herein) by

23  the Court being entered for judgment, pursuant to Webber v.

24  Fernandez, 2023 U.S. Dist. LEXIS 107978 (N.D. Ill.; 22 June 2023).

25    The O&M herein below is intentionally written as and in a

26  pleading brief format that may easily be attached as an exhibit

27  to a filed appeal to the U.S. Court of Appeals for the Second

28  Circuit in the future, if necessary; sans reproduced composition

1  by Petitioner in that tense, due to lacking resources. Doing
2  so allows for court-time economy of such a presumptive filing
3  and consistency of arguments at appeal that are guaranteed
4  to be entirely identical to those brought forth here in district
5  court — as a gentlemanly gestured opportunity to vacate
6  their prior Order entered.

8  PLEADING BRIEF OF PETITIONER AND/OR APPELLANT

10  Φ.  Introduction.
11      A. Opposing Views.
12          At Doc. 3 (No. 20-cv-7835), Judge Pauley, writing
13      for the Court, "concluded that the motion brought
14      under 28 U.S.C. § 2255 should not be summarily
15      denied as being without merit...." At Doc. 21, Judge
16      Cronan, writing for the Court, ordered that the
17      "motion is denied in its entirety," thus saying it is
18      "meritless." Such contrasting, opposing views of the
19      same material facts — even though Petitioner repeatedly
20      advised the Court of a future need to request leave to
21      amend, and motioned for stay while consequential
22      issues related to this case and No. 19-CR-0672 in
23      other courts became final — suggests that apparent
24      errors in case review have occurred during habeas
25      proceedings to date. Further, where there are diff-
26      erences of opinion in court findings and/or determinations
27      of law, then objections and/or appeals are necessary to
28      achieve a clear resolution.

B. Restatement of Facts in O&M.

Per the foregoing paragraph, Petitioner shall resort to set aside Respondent's distractions (in briefs) and restate the facts (by rule or right of appeal); with better articulation — reliant upon court records on file, authorities of law, and constitutional standards. This must be done to correct seemingly errant court perspective, in the interests of justice; not merely permit the Court to co-sign and "rubber stamp" the business of the U.S. Attorney to "win cases" (at all costs) when they are to "render justice." _Berger v. United States_, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

I. Brevity of Arguments.

A. Petitioner's Claims

Despite Petitioner's gentle-mannered, mischaracterized, sarcastic in-court response of "Absolutely. Yes." to Judge Pauley's inquiry about satisfaction with counsel's representation, in his § 2255 habeas motion, Petitioner — once he was able to conduct his own expanded due diligence of established law and discover fundamental miscarriages of justice, since 2019 — claimed:

(1) Ineffective Assistance of Counsel ("IAC"); Alleging that his professionally trained trial counsel (Messrs. Cohen and Chang, with Federal Defenders of New York ("FDNY"); a law firm) failed to investigate

3

the text, structure, and history of the charged
offense (28 U.S.C. §2250(a)) by the Government
against Petitioner. Specifically, FDNY counsel harmfully
neglected to advise Petitioner that §2250(a) text has
no legal or structural application against Petitioner
without 34 U.S.C. §20913(d) text in force. Pursuant
to a prior case history argued by FDNY (namely, Gundy
v. United States, 139 S.ct. 2116 (2019)), Counsel was in
the perfect position to know or easily discover that an
affirmative defense     in which to build a legal
strategy readily existed, that §20913(d) is/was
questionably unconstitutional for a probable violation
of separation-of-powers; see Gundy, concurring and
dissent opinions. Counsel's alleged responsibility was
to defend Petitioner and argue the law through motions.
Counsel allegedly did neither and outright abandoned
Petitioner by stating "unless you can change the law,
there is nothing we can do" — despite Petitioner
raising a possible defense via Gundy, and counsel
refusing to proceed on that basis requested. Clearly,
a federal question of law (e.g., separation-of-powers;
not ex post facto, nondelegation, or other) exist(s)ed;
particularly given Petitioner's pre-SORNA status (on
par with that of Gundy), which it is alleged Counsel
did not bother to investigate (beyond the prosecutor's
complaint) in preparation to meet and counsel
Petitioner in the first offing. Petitioner alleges a
competent, effective counselor would have motioned

and filed an interlocutory appeal (on par with subpoena of witnesses in support of the defense) (under 28 U.S.C. §1291 and/or 1292) on behalf of their client raising that federal question before a final judgment in the criminal case occurred. Defense counsel allegedly did not do so and foreclosed effective assistance entirely by their unsolicited statement (quoted above) to refuse and deny actual or constructive counsel throughout the proceedings.

By stare decisis and other persuasive precedents (see below), Petitioner alleges he received ineffective assistance of counsel (bad advice to enter an allocution as an information, and bad advice to plead guilty) due to prejudiced actions — i.e., failure to investigate; failure to adversarially challenge — that fell far below any reasonable standard of what a competent attorney would do. The outcome might have likely led to an acquittal or dismissal of the criminal case, not the conviction that resulted.

In light of the facts, sans Counsel's errors, Petitioner rationally maintains he would not have voluntarily and knowingly pleaded guilty and with reasonable probability would have instead insisted on going to trial, if he had been properly advised by effective counsel and assisted from the start; while patiently pursuing his right to an interlocutory appeal. Petitioner alleges that success at trial would not have mattered as it would have been better than a guaranteed losing outcome of pleading

5

guilty by "open plea." Per the foregoing, Petitioner claimed IAC in his habeas motion (presently, and at appeal).

See: Thomas v. Lockhart, 738 F.2d 304, 308 (8th Cir. 1984) (investigation consisting solely of reviewing prosecutor's file "fell short of what a reasonably competent attorney would have done"); Gomez v. Beto, 462 F.2d 596, 597 (5th Cir. 1972) ("[W]hen a defense counsel fails to investigate his client's only possible defense, although requested to do so by him, and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant has had the effective assistance of counsel."); Gaines v. Hopper, 575 F.2d 1147 (5th Cir. 1978) (defense counsel presented no defense and failed to investigate evidence of provocation); Groseclose v. Bell, 130 F.3d 1161, 1169-70 (6th Cir. 1997) (describing defense counsel's "failure to have any defense theory whatsoever" and "failure to conduct any meaningful adversarial challenge" as "especially appalling" in holding attorney ineffective); United States v. Cronic, 466 U.S. 648, 658-59 (1984) (presumption of prejudice applies when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," where counsel is actually or constructively denied during a critical stage of the proceedings, or when there is "various kinds of state interference with counsel's assistance"); Hill v. Lockhart, 474 U.S. 52 (1985) ("The defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); Lee v. United States, 137 S. ct.

1958 (2017); <u>Garza v. Idaho</u>, 139 S.ct. 738 (2019) (held that it is the right to appeal that counts, not the viability (or likelihood of success) of the appeal, when it comes to assessing IAC); <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>United States v. Akande</u>, 956 F.3d 257 (4th Cir. 2020); <u>Velazquez v. Sup't Fayette SCI</u>, 937 F.3d 151 (3rd Cir. 2019) ("The <u>Hill</u> inquiry did not involve examining the petitioner's likelihood of success had he insisted on trial, but merely whether he would have gone to trial at all.");

<u>United States v. Swaby</u>, 855 F.3d 233 (4th Cir. 2013) ("but for his counsel's erroneous advice, he could have negotiated a different plea agreement"); <u>Ferrara v. United States</u>, 456 F.3d 278 (1st Cir. 2006) (the government's misconduct could also provide grounds to establish prejudice under <u>Hill</u>; "absent this misconduct, there was a reasonable probability that the petitioner would not have pleaded guilty but, rather, would have rejected the proffered plea agreement and opted for trial;" affirming grant of §2255 motion); <u>McMann v. Richardson</u>, 397 U.S. 759 (1970) (dealing with IAC claims; "when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth."); <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973).

(2) Ineffective Assistance of counsel ("IAC");
Alleging that his professionally trained defense counsel
refused and failed to investigate the manner of arrest,
seizure, and search for incriminating evidence subject to
the prosecution's case file; as well as established law
compliance. Petitioner informed counsel — whom allegedly
deflected such mentions below as being "irrelevant to the
case" — of the same details in "Petitioner's Declaration,"
as part of a filed motion with the Court, by mailbox rule,
on or about 27 February 2021 (see "Exhibit 1-A" hereto).

     After expanded due diligence, Petitioner concedes that
on the morning of 03 May 2018 (at approx. 0600 hrs.) both
the complement of peace officers from the New York
Police Department ("NYPD") and the New York – New Jersey
Joint Task Force of the U.S. Marshals Service ("USMS")
approached, knocked, announced, were let in by a cohabitor,
and then entered the 351 West 23rd Street, Apt. 1B,
Manhattan residence of Petitioner for the lawfully auth-
orized sole purpose of executing and enforcing a valid
arrest warrant (see "Exhibit 1-B" hereto) for him related
to a specified criminal case in California (San Diego).
Petitioner was apprehended startled from sleep, in bed,
and nude, at the time and scene of his arrest — by raid
of his separated bedroom. To this point, Petitioner does
not contend otherwise.

     Post execution of the valid arrest warrant — with
Petitioner advanced from nude to fully clothed (under
the watchful eyes of no less than six NYPD and USMS

officers); then put into hand restraints; repeatedly responding "I will not answer any of your questions without the presence of legal counsel," or "May I see the warrant, please?" or remained silent to myriad questions (without being Mirandized {per *Miranda v. Arizona*, 86 S.Ct. 1602 (1966)}, though in custody with no free will to leave); and observing his two mobile phones being seized, from a physically distant bedroom nightstand table, that were not on his person, nor incident to his arrest, and connected to electrical wall outlet charging devices — USMS made a seemingly post-arrest discovery of other incriminating evidence (e.g., failure to register as a sex offender) implicating Petitioner during an intervening circumstance. Competent, effective counsel would have recognized and understood such a demarcation from one phase (enforcement of an arrest warrant) to another (post-arrest discovery). Petitioner alleges that defense counsel from FDNY refused and failed to scrutinize this critical point to any standard investigative due diligence.

   If defense counsel for Petitioner had been effective in their assistance, then they would have known that a warrant for any subsequent search and/or seizure was needed to act upon any post-arrest discovery. And if no warrant was required, then evidence, existence, and implemented application of any Fourth Amendment waiver (pursuant to an active, unexpired, unrevoked term of probation one is instantly serving) must be informed, read aloud, and acknowledged to be in effect; similar to a warrant

authorizing search and/or seizure. See Rawlings, below.
[Petitioner was not on probation (or other criminal sanction
or warrant, from Utah) at the time of arrest warrant exe-
cution (from California).] Competent, effective counsel
would have contested this issue by motion. Instead, counsel
from FDNY is alleged to have done otherwise.

Unlike in Rawlings v. Kentucky, 448 U.S. 98, 100 S.ct.
2556 (1980), neither NYPD or USMS officers present left to
obtain a warrant so they could properly act on their post-
arrest
discovery not authorized by the sole arrest warrant at
superceding force that morning, at the time and scene of
arrest of Petitioner.

Warrantless, USMS nevertheless illegally seized Petitioner
(away from NYPD view; and in flagrant disregard and well
beyond the terms of the arrest warrant), illegally seized his
property (mobile phones) (and presumably searched them
thereafter, in violation of Carpenter v. United States, 138 S.ct.
2206 (2018); Riley v. California, 573 U.S. 373 (2014); United
States v. D'Andrea, 648 F.3d 1 (1st. cir. 2011); et seq.), search-
ed (and photographed) the contents of Petitioner's wallet
(that was not incident to the arrest), and searched Petitioner
to discover — using the Reid technique — incriminating
evidence (via frightened, involuntary vehicular custodial
interrogation; post-recorded reading of Miranda) regardless
of Petitioner repeatedly requesting just minutes before at
the scene of arrest to have an attorney present prior to
any questioning, per Edwards v. Arizona, 101 S.ct. 1880
(1981).

Competent, truly professional, and effective counsel would have clearly known, recognized, and understood the above, and that any matter of search and/or seizure (post the valid execution of the arrest warrant) required a warrant, or other legitimate basis, for anything beyond the scope of the arrest warrant, and that any warrantless post-arrest discovery evidence found must be motioned for suppression ahead of trial — regardless of how it was derived. Defense counsel refused and filed to investigate, and then advise Petitioner of these realities of law; thus, prejudice is alleged and presummed.

Further, effective counsel would have been knowledge-able of: United States v. Foster, 100 F.3d 846 (10th Cir. 1996) (where officers acting in flagrant disregard of the terms of a warrant seized "anything of value" from defendant's residence, the extreme remedy of blanket suppression was imposed by the district court); United States v. Shaw, 464 F.3d 615 (6th Cir. 2006) (holding that the seizure of a person without a warrant clearly authorizing such act violates the Fourth Amendment, and any Mirand-ized statement of evidence by virtue of an illegal seizure of a person may be suppressed due to the unconstitutional manner in which it was obtained); as well as United States v. Williams, 615 F.3d 657 (6th Cir. 2010); United States v. Wurie, 728 F.3d 1 (1st Cir. 2013); United States v. Mayo, 2013 U.S. Dist. LEXIS 158866 (2nd Cir. 2013); United States v. Phillips, 9 F.Supp.3d 1130 (9th Cir. 2014); United States v. Camou, 773 F.3d 932 (9th Cir. 2014); and Ferrara (2006), supra. Counsel from FDNY failed to advise Petitioner of any of these lawful resorts (and more)

1  entirely throughout... because the warrant issue(s) were

2  "irrelevant to the case" as they thought to advise.

3      Per the foregoing, Petitioner claims IAC in this habeas

4  motion (now and at appeal).

5  (3) Ineffective Assistance of Counsel ("IAC");

6  Alleging that his professionally trained defense counsel,

7  in line with and incorporating the two previous claims for

8  IAC herein, failed to challenge the evidence obtained in post-

9  arrest discovery ahead of trial or plea. Effective and compe-

10  tent assistance of counsel would have recognized, understood,

11  known, and advised that the evidence obtained during an

12  illegal seizure (of a person and/or property) and illegal search

13  needed to be challenged by motion to suppress outright.

14      In <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), the

15  Supreme Court determined that an IAC claim regarding

16  counsel's failure to challenge the evidence was really a Sixth

17  Amendment right-to-counsel claim, not a "direct" Fourth Am-

18  endment claim barred by <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

19  Thus, the Court provides a work-around for Fourth Amend-

20  ment habeas claims using the well-worn path for IAC claims.

21      To bypass the bars of <u>Tollett (1973)</u> and <u>McMann (1970)</u>

22  seen supra, <u>Massaro v. United States</u>, 538 U.S. 500 (2003)

23  ruled that an IAC claim can provide cause and prejudice to

24  avoid the procedural default of <u>Stone (1976)</u> supra.

25      As such, Petitioner claims that his guilty plea is not

26  valid due to counsel's failure to challenge the incriminating

27  evidence obtained during an illegal seizure and/or search.

28  Consequently, Petitioner would not have voluntarily and

1  knowingly pleaded guilty, and insisted instead to proceed
2  to trial.
3      The above is not a novel filing for relief under § 2255
4  claim. In United States v. Cavitt, 550 F.3d 430 (5th cir.
5  2008), a federal petitioner argued over drug evidence
6  obtained during an illegal search. While the district court
7  denied relief, stating Stone supra barred his Fourth Amend-
8  ment argument, the Court of Appeals vacated that decision
9  and concluded that the IAC claim bypassed the Stone
10  bar. On remand, the district court found that counsel
11  was indeed ineffective and allowed the petitioner to
12  withdraw his guilty plea. Cavitt v. United States, 2009
13  U.S. Dist. LEXIS 144833 (E.D.Tex.; May 29, 2009).
14      Defense counsel stood silent on the totality of the
15  above; therefore Petitioner alleges prejudice, per Cronic
16  (1984) supra, etc., and claimed IAC.
17  B. Respondent & District Court Position.
18  The Government needed to prove beyond a reasonable doubt
19  three elements; (1) Petitioner was required to register
20  under SORNA, (2) Petitioner traveled in interstate or
21  foreign commerce, and (3) Petitioner knowingly failed to
22  register or update a registration as required by SORNA.
23      District Court holds in its Order that the Government
24  proved all three elements beyond a reasonable doubt, while
25  also opining. "Notably, when asked by Judge Pauley at
26  [Petitioner's] plea hearing to summarize the Government's
27  evidence, the Assistant United States Attorney did not mention
28  any of the items seized at the time of [Petitioner's] arrest.

1  II. Objections; Motion for Reconsideration; Motion to Vacate Order

2     A. Objections.

3       (1) The district correct is <u>correct</u> that the first element

4       of what the Government needed to convict was satisfied by

5       judicial documents from or related to a 2003 Utah state

6       sex offense case; however a federal question about retroactiv-

7       ity of SORNA clearly exists about Petitioner's requirement to

8       register, per first IAC claim.

9       (2) The district correct is <u>not correct</u> that the second and

10      third elements of what the Government needed to convict was

11      satisfied by the evidence; as both foundations are alleged

12      to be resultant from warrantless methods that generated the

13      purported incriminating evidence through illegal seizure and/or

14      illegal search — per second and third IAC claims — so to

15      extract Petitioner's post-arrest (warranted, non-Mirandized)

16      and post-seizure (unwarranted, Mirandized) statements and

17      presummably search for geotracking data in relation to his

18      mobile phones, as there was no other way the Government

19      could have obtained it otherwise.

20      (3) Petitioner alleges the Government "did not mention any

21      of the items seized at the time of ... arrest" so as to avoid

22      and escape any spectre of probable misconduct and/or

23      questions about how the evidence was actually obtained; which

24      suggests the Government knew their case was predicated

25      upon clear violations of constitutional protections favoring

26      Petitioner. (what did the Government know, and when did they know it?)

27    B. Motion for Reconsideration.

28      Pursuant to the foregoing, district court is motioned to

1    reconsider the questionably solid reasoning of its Order.

2    C.   Motion to Vacate Order.

3        Pursuant to the foregoing, Petitioner motions the Court

4        to vacate the Order from 10 July 2023.

5

6    III. Present Status of Affairs in Other Cases That Affect These

7    Proceedings; Motion for Stay.

8        A. Present Status.

9        Not content with the IAC received from FDNY, Petitioner has

10   chosen to advocate for himself. Since original filing of his

11   2255 petition for habeas relief, Petitioner has:

12   (1) put the underlying "grandfather" Utah state case, for alleged

13   misdemeanor sex offenses in 2003, under collateral attack by

14   2254 petition (U.S.D.C., D.Ut., No. 20-cv-0774) and pending

15   appeal (U.S.C.A., 10th Cir.) — where Petitioner claims cause

16   and prejudice, cites denial of effective assistance, IAC, and

17   reasonable doubt (evidence of witness tampering by prosecution);

18   and

19   (2) advanced a 1983 civil complaint (U.S.D.C., D.Ut., No. 22-cv-

20   595), an interlocutory appeal (U.S.C.A., 10th Cir., No. 23-4066),

21   and filed a petition for writ of certiorari (U.S.S.C., No.23-5051)

22   — where Petitioner challenges the constitutionality of his

23   alleged retroactive designation (under federal law (e.g., 34 U.S.C.

24   § 20913(d)), and his alleged requirement to register (under

25   federal law (e.g., 28 U.S.C. § 2250(a)); citing a separation-of-

26   powers clause violation that questions standing of § 20913(d).

27   [ See: Gundy, concurrence and dissent opinions, supra; and

28   U.S.D.C., S.D.N.Y., No. 22-cv-7870.] Also: the complaint

1    defines SORNA as government compelled speech, questions
2    the constitutionality of SORNA in view of the First Amendment,
3    and challenges the validity of civil contracts of adhesion that
4    administratively require one to waive their private First Amend-
5    ment rights so to submit publicly to sex offender registration
6    requirements that are enforced by criminal sanctions for non-
7    compliance to SORNA.§

8   B.   Motion for Stay.

9    Petitioner repeatedly motioned for stay from district court,
10   due to the progress of the above. He was routinely denied.
11   Obviously, success in either or both of the above avenues,
12   would establish discovery of new facts — per <u>Johnson</u> v.
13   <u>United States</u>, 544 U.S. 295 (2005), and 28 U.S.C. §2255 (f)(4)
14   — and/or retroactive application of a Supreme Court decision
15   — per <u>United States v. Peter</u>, 310 F.3d 709 (11th Cir. 2002),
16   and 28 U.S.C. §2255 (f)(3).

17    The motion(s) for stay by Petitioner were reasonable so
18   that incorporation of the herein and of case conclusions in
19   those above vectors could be applied within an amended comp-
20   laint (habeas petition) rather than be consigned to a second or
21   successive petition (or motion) with an inherently higher climb
22   to seek habeas relief.

23    Therefore, once again, Petitioner motions for stay of
24   these proceedings; once the 10 July 2023 Order is vacated
25   and No. 20-cv-7835 / 19-cr-0672 is/are reopened by
26   reversing the Court's error, and while an anticipated
27   interlocutory appeal proceeds in this/these case(s),
28   thereafter immediately.

IV. Other Facts; Other Developments.

   A. Other Facts.

      (1) Per paragraphs 46 and 47 of "Exhibit 3-A" enclosed, at p.9, on 03 May 2018, this Nevada arrest warrant was the only other such device on record anywhere. (See B(1), of this part, below.)

      (2) Per paragraph 29 of "Exhibit 3-A" enclosed, at p.6, and per "Exhibit 4-A", the Third District (Justice) Court of Utah issued a bench warrant on 21 May 2018; 18 days after Petitioner's arrest in New York, and 4 days after his extradition/transfer to California. [Note: Petitioner was not a Probationer, nor had any arrest warrant for him out of Utah, prior to 21 May 2018 — and certainly not on 03 May 2018. Therefore, no Fourth Amendment waiver was in force on 03 May 2018; date of Petitioner's arrest.]

      (3) Per "Exhibit 3-B" enclosed, USUS issued a detainer on 01 June 2018; 29 days after Petitioner's arrest in New York, and 14 days after his extradition/transfer to California. Clearly, NYPD and USMS, on 03 May 2018, had no other lawful business to carry out than arrest warrants from either California and Nevada; as no other authorizations by courts (i.e., warrants or detainers) were in existence on that date.

   B. Other Developments.

      (1) Petitioner motioned — from California state prison — for Nevada state case dismissal. On 25 April 2023, the case was dismissed, and the bench warrant was recalled and cleared. See "Exhibit 3-C" enclosed. (Counsel from FDNY previously mentioned to Petitioner, "There are many kinds of

warrants. Let sleeping dogs lie. (Meaning, "don't disrupt this issue and leave the matter alone.")." More bad, ineffective advice.)

(2) The Utah state case is under collateral attack. (See A(1) of Part III above.) However, why did a Utah state court after more than 8 years of case inactivity issue a warrant? Perhaps... collusion with the U.S. Attorney (S.D.N.Y.) to justify building a case upon warrantless post-arrest discovery evidence? (See A(2) and A(3) of this part above.)

(3) The California state case (origin of the arrest warrant executed on 03 May 2018), per paragraph 37 of "Exhibit 3-A" enclosed, at p. 8, is under collateral attack; presently at appeal before the U.S. Court of Appeals for the Ninth Circuit (No. 23-55441).

Evidently, Petitioner is correcting his errata, as narrated in "Exhibit 3-A." More revision thereto forthcoming.

V. Closing Statement; Motion for Evidentiary Hearing.

In America, laws and finance move from east to west, like sunlight. Manners and values flow from west to east, like food, water, and air. This filed paper installment proceeds with California (Petitioner) instilling mannered discipline to impose valuable fact upon New York (Respondent, and Court) by virtue of their own integrity, laws, and financial largesse.

The foregoing objections and motions must be expressed because of the most recently repetitious and disrespectful insult — first, by Respondent (in a letter brief to Court, dated 26 June 2023 (see "Exhibit

1  5-B" attached herein); second, by Judge Cronan (in the Order,

2  dated 10 July 2023 — endured by Petitioner in relationship to

3  his § 2255 petition being directly and indirectly called

4  "meritless." That position (and attitude) by Respondent and the

5  Court is quite myopic, unfaithful to precedents, unkind, and

6  cannot be allowed to stand without further question (and attitudi-

7  nal adjustment) to their posture by Petitioner.

8     Petitioner hereby files the herein to most respectfully contest

9  and protest (and appeal) the status quo to date.

10    Per the foregoing of this filing, the petition "should not be

11  summarily denied as being without merit" (see "Exhibit 2-A").

12  Indeed, it is meritorious. Petitioner shall continue to press that

13  fiber and integrity, come what may. (c'est la vie.) To this fact,

14  Petitioner motions for an evidentiary hearing, per 28 U.S.C. § 2255

15  (b) and Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017), to

16  find the allegations in his § 2255 motion are true and entitle him

17  to habeas relief; post filing of an amended petition in the future

18  (when necessary). At and in preparation for such a hearing,

19  Petitioner shall seek court-ordered subpoenas for production of

20  documents, records, communications, and persons to verify the

21  terms of arrest warrants valid on 03 May 2018; the warrantless

22  and illegal seizure of Petitioner and Petitioner's property; the

23  withholding of said property by Respondent until after Petitioner

24  pleaded guilty and was sentenced; the warrantless and illegal

25  search of Petitioner's effects that were not incident to the time

26  of arrest; and possibly more.

27    Like most defendants, Petitioner does not deny (though said

28  in sarcasm) that, when asked by Judge Pauley of his satisfaction

with Counsel's performance, he answered affirmatively — because he did not know better (and was being kind). However, circumstances (thanks to extended due diligence) have changed. The Supreme Court has said that while the barrier in Blackledge v. Allison, 431 U.S. 63 (1977) is "formidable" and "imposing," it "is not invariably insurmountable." (Allison's case was remanded to the district court for an evidentiary hearing.) Thus, this O & M (or appeal).

Lastly, Respondent is hereby advised that Petitioner's pursuit for compensatory and punitive damages, at a later trial for damages, as part of habeas relief requested, was previously intended to be modest. The "meritless" swipe, and the afore-mentioned above herein and hereto, has altered that modest damages sum in contemplation to one that is presently astronomical. (Gird your loins.) Petitioner is open to discuss settlement to save the Government further embarrassment; otherwise: see you in court.

Respectfully submitted.

25 July 2023

Andrew Valles,
Petitioner / Defendant
(Pro Se / IFP)

Enclosures

— end —

Exhibit  1 – A



$\frac{1}{3}$

United States District Court
Southern District of New York

| | |
|---|---|
| Andrew Valles, Petitioner / Movant v. United States of America, Respondent. | Case Nos. 1:20-CV-7835 (WHP) 1:19-CR-0672 (WHP) |
| Before the Honorable Presiding: District Court Judge William H. Pauley, III 27 Feb. 2021 | 1) Motion For Appointment of Alternative Legal Counsel; Motion For Extension of Time (2$\underline{nd}$ Request) 2) Petitioner's Submission of Factual Declaration 3) Case Status Update |

Your Honor,
    Most respectfully, please be advised of the following and foregoing.

1) As the case docket shows, per items 8 and 9, I provided for consideration joint motions requested (dated **24** December 2020) pursuant to inequitable conditions imposed beyond my power to obviate or displace in order to properly respond to The Government's answer to my 2255 petition. Though docketed on 06 January 2021, as of this date I am patiently awaiting leave and instructions. Please, do advise. Thank you.

$$\frac{2}{3}$$

2)  Be advised, and accept for case record entry,
    my submission of factual declaration of events
    that occurred on 03 May 2018; which favor
    my 2255 petition (Ground/Claim Three) and
    which The Government cannot refute to the
    contrary. (See attachment.)

3)  Relevant as the bedrock foundation of the
    hereof and hereto, be advised on 28-29
    October 2020, I filed a 2254 petition in
    U.S. District Court, District of Utah, by
    mail. My petition was received by the
    Court's Clerk on 02 November 2020, and
    then-pending an application to proceed
    without payment of fees, then granted
    filing on 06 January 2021. The case
    number is 2:20-cv-774-DBB. This
    matter is entirely relevant because it is the
    inception and nexus of The Government's
    cause to file their initial criminal complaint
    in July 2019 under direct attack. In my
    view, and for that court to decide, obvious
    reasonable doubt exists to grant habeas
    corpus relief there; which would call in to
    question the propriety of the matter brought
    forth here, and it's standing, and it's
    aftermath to date.
        Should His Honor, in this court, sua
    sponte extend and continue this matter
    until after that before the District of Utah
    has concluded, then I shall certainly raise
    no objection.

As I close herein, much of my petition (and the

$$\frac{3}{3}$$

events of 03 May 2018 memorialized in paragraph 2 above; previously mentioned to previous legal counsel, and deflected as "irrelevant to the case") would have been entirely avoided had my counsel in the criminal proceedings been better resourced — with research staff, time, and attentiveness — and therefore less ineffective to file interlocutory appeals (per Ground/Claim One points, and subsequent addenda submitted), object to evidence and process in seek of respective suppression and redirection (per Ground/Claim Two points, and subsequent addenda submitted), and scrutinize the means and motive of arrest and interrogation for legal compliance (per Ground/Claim Three points, and subsequent addenda submitted). This matter in totality would be a nullity were there to have been grander application and implementation of the faithful rule of law; unfortunately, that did not happen — so here we are.

Again, I await your determination(s) for leave, and instructions. Thank you for your care and time.

COMPOSITION COMPLETED: 27 February 2021

Signed 27 Feb. 2021

Andrew Valles

$\frac{1}{2}$

<u>Petitioner's Declaration</u>

I, Andrew Valles, the petitioner in this action, declare under penalty of perjury that the following statements are true and correct.

On 03 May 2018, at the time and scene of arrest, police apprehended me (while nude and in bed) pursuant to a lawful warrant authorized from a California court. Peace Officers from the New York Police Department ("NYPD") and the New York - New Jersey Joint Task Force of the United States Marshal Service ("USMS") were both on the scene; 351 West 23rd Street, Apt. 1B, New York, New York 10011. While in their combined presence, I clothed myself and then was immediately handcuffed in to restraints; instantly thereafter I was barraged with questions by officers from both the NYPD and USMS <u>without</u> once being read my rights under Miranda (Miranda v. Arizona, 86 S.Ct. 1602 [1966]). To each question I either remained silent, stated "I will not answer any of your questions without the presence of legal counsel", or asked "May I see the warrant, please?" At every reply I was ignored and their questions continued. After approximately fifteen minutes, I was permitted (while being watched) to urinate; then taken by USMS to an unmarked minivan, seated in the rear of the vehicle, read a truncated version

of *Miranda*, and interrogated further —
even while the automobile was in motion.
I was uncertain (and frightened) of
where I was going to be taken. I was
not provided legal counsel as requested
at the scene of arrest. Some time later,
on a New York City street unfamiliar to
me, I was transferred into the custody
of NYPD and then taken to the
Metropolitan Detention Center in Lower
Manhattan. It was not until hours later,
for an extradition hearing, by appointed
counsel, that I was able to review the
California arrest warrant.

    NYPD and USMS, the Government's
law enforcement agencies, in concert, both
knew I iterated over *thirty times* in those
fifteen minutes — prior to a sudden change
of interrogation environment — my implication
to have legal counsel present (either by
statement or silence).

    These facts were not part of the
Government's submitted evidence to the
court, as *Miranda* and *Edwards* (Edwards v.
Arizona, 101 S. ct. 1880 §1981§) violations occurred.

    So dutifully declared and attested,

                                        signed 27 Feb. 2021

    Andrew Valles

Exhibit   1 - B



To those concerned:

    Leading to filing of the 25 July 2023 O&M Petitioner attempted to retrieve the arrest warrant — authorized, circa January 2018, by a California state court — that was executed on 03 May 2018 in New York City; from both prison officials and the court itself. (Evidence thereof to such efforts follows.)

    Regretfully, copy of the above referenced arrest warrant did not arrive timely to include here with the O&M.

                  Regards,

30 July 2023

                  Andrew Valles,
                  Petitioner / Defendant
                  (Pro Se / IFP).

Andrew Valles BJ6191
CA-2120

## CALIFORNIA INSTITUTION FOR MEN
### PROOF OF SERVICE BY MAIL
(C.C.P. §1013a; §2015.5; Fed.R.Civ.P. 5; 28 U.S.C. 1746)

**(A)** In re: _Valles_                                Case # _SCD 266438_

I am over the age of eighteen years, a citizen of the United States, a resident of the State of California, and not a party to the within action.  My mailing address is: P.O. BOX  500 CHINO, CA 91708.

On the following date: **(B)** _19 July 2023_ , I served the following document(s): **(C)**

_Letter to clerk (warrant request)_

On the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, addressed as follows to the following parties: **(D)**

_clerk of the Court_
_Superior Court of California_
_County of San Diego_
_1100 Union Street_
_San Diego, California 92101_

I am readily familiar with the normal business practices for collection and processing of correspondence and other materials for mailing with the United States Postal Service.  On the same day that correspondence is placed for collection and mailing, in a sealed envelope with postage fully prepaid, it is deposited in a box so provided at the correctional institution in which I am presently confined.

I certify (or declare) under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**(E)** Name: _Andrew Valles_                CDCR#: _BJ6191_

Signed: _____                Dated: _19 July 2023_

| CIM MAILROOM ACKNOWLEDGEMENT OF MAILING |
DATED: _7/20/23_        STAFF: _M. Alvarez_
SIGNED: _____

A. Valles
CDCR No. BJ6191
Fed. Reg. No. 86080-054
CIU (C-A-212up)
P.O. Box 500
Chino, CA 91708

Clerk of the Court
Superior Court of California
County of San Diego
1100 Union Street
San Diego, California
92101

CONFIDENTIAL
legal/court
mail

1   19 July 2023

2

3   Clerk of the Court

4   Superior Court of California

5   County of San Diego

6   1100 Union St.

7   San Diego, California

8   92101

9

10  Re: People v. Valles, Case No. SCD266438

11

12

13  Dear Sir, Ma'am, or Esteemed,

14

15      Please provide to me a copy of the warrant

16  for my arrest in this Court, as referenced above.

17  The request above is a required exhibit for a

18  pending federal court case. Please expedite. Thank

19  you.

20

21                          Most respectfully requested,

22

23  19 July 2023

24  1152 hrs.

25

26                  Andrew Valles

27

28  —end—

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS
CDC 805 (11/87)

# U SAVE 'EM
Intradepartment Envelope

DO NOT SEAL THIS ENVELOPE

Case
Records

Copy 2 of 2
(warrant copy request)

STATE OF CALIFORNIA
GA-0022 (Rev 2013-10)

DEPARTMENT OF CORRECTIONS & REHABILIATION

# INMATE REQUEST FOR INTERVIEW

| DATE | TO | FROM (LAST NAME) | CDCR NUMBER |
|---|---|---|---|
| 19 July 2023 | Case Records | Valles | BJ6191 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | | JOB NUMBER | |
|---|---|---|---|---|---|
| C - A - | 212 UP | — | | FROM — | TO — |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | | ASSIGNMENT HOURS | |
|---|---|---|---|
| — | | FROM — | TO — |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Please provide to me a copy of the warrant for arrest in my Superior Court of California, County of San Diego, case (Case No. SCD266438). Thank you.
[The above is a required exhibit for a pending federal court case. Please expedite.]

**Do NOT write below this line. If more space is required, write on back.**

| INTERVIEWED BY | | DATE |
|---|---|---|
| DISPOSITION | | |

Exhibit  2 - A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW VALLES,

                              Movant,                    1:20-CV-7835 (WHP)

              -against-                                  1:19-CR-0672 (WHP)

UNITED STATES OF AMERICA,                       ORDER TO ANSWER, 28 U.S.C. § 2255

                              Respondent.

WILLIAM H. PAULEY III, United States District Judge:

      The Court, having concluded that the motion brought under 28 U.S.C. § 2255 should not be summarily denied as being without merit, hereby ORDERS that:

      The Clerk of Court shall electronically notify the Criminal Division of the U.S. Attorney's Office for the Southern District of New York that this order has been issued.

      Within sixty days of the date of this order, the U.S. Attorney's Office shall file an answer or other pleading in response to the motion. Movant shall have thirty days from the date on which Movant is served with Respondent's answer to file a response. Absent further order, the motion will be considered fully submitted as of that date.

      All further papers filed or submitted for filing must include the criminal docket number and will be docketed in the criminal case. A copy of this order is also being mailed by Chambers to the petitioner.

SO ORDERED.

Dated:    September 25, 2020
        New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

Exhibit   3 - A

P6397423

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket No.: 0208 1:19 CR 672-01 (WHP) |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| ANDREW VALLES | ) | Sentence Date: 12/20/2019 |
| | ) | |

---

**Prepared for:**  Honorable William H. Pauley III
Senior U.S. District Judge

**Prepared by:**  Emily P. Frankelis
USPO Specialist
212-805-5193
Emily_Frankelis@nysp.uscourts.gov

**Assistant U.S. Attorney**
Sarah Mortazavi
One Saint Andrews Plaza
New York, NY 10007
212-637-2520
sarah.mortazavi@usdoj.gov

**Defense Counsel**
Wen-ying Angela Chang
Martin S. Cohen
Federal Defenders of New York Inc.
52 Duane Street, 10th Floor
New York, NY 10007
212-417-8727 (Chang)
212-417-8737 (Cohen)
angela_chang@fd.org
martin_cohen@fd.org

**Offense:**  **Count 1**: FAILURE TO REGISTER AS A SEX OFFENDER
(18 U.S.C. § 2250) CLASS C FELONY
Maximum of 10 years of imprisonment/5 years to lifetime supervised
release/maximum fine of $250,000/$100 special assessment

**Release Status:**  Detained since arrest in California state custody on 07/15/2019

**Detainers:**  None

**Codefendants:**  None

**Related Cases:**  None

Date Report Prepared: 11/05/2019          Date Report Revised: 12/04/2019

## Identifying Data:

| | |
|---|---|
| Date of Birth: | June 21, 1977 |
| Age: | 42 |
| Race: | Other Race |
| Hispanic Origin: | Unknown origin |
| Sex: | Male |

| | |
|---|---|
| SSN#: | 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 |
| FBI#: | 343150TB5 |
| USM#: | 86990-054 |
| State ID#: | None |
| Alternate IDs: | State ID Number: CA 37643671 |
| | State ID Number: NV 04000789 |
| | State ID Number: UT 01051445 |
| | State ID Number: WA 22200883 |
| ICE#: | N/A |

| | |
|---|---|
| Education: | Some College |
| Dependents: | None |
| Citizenship: | U.S. Citizen |
| Immigration Status: | N/A |

| | |
|---|---|
| Address: | 351 West 24th St. Apt. 1B |
| | New York, NY 10011 |

| | |
|---|---|
| Alias(es): | Reported True Name: Andrew Don Valles III |

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

Valles, Andrew                                     3                                P6397423 - Frankelis, Emily

## PART A. THE OFFENSE

### Charges(s) and Conviction(s)

1. One-count felony Information 19 CR 672 (WHP) was filed in the Southern District of New York.

2. Count 1 charged that from at least July 2006, up to and including May 2018, in the Southern District of New York and elsewhere, **ANDREW VALLES**, who is required to register as a sex offender under the Sex Offender Registration and Notification Act, traveled from Utah to New York, in which he resided and where he was required by law to register, without registering as a sex offender in either location.

(18 U.S.C. § 2250)

3. On September 13, 2019, **VALLES** pled guilty as charged in the Information. He is scheduled to be sentenced on December 20, 2019, before the Honorable William H. Pauley III.

4. Pursuant to the suggestion of the court in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), the Government outlined its analysis of the guideline calculations as follows:

   a) The Guidelines provision applicable to Count 1 is USSG §2A3.5.

   b) Pursuant to USSG §2A3.5(a)(3) because the defendant is a Tier I offender, the base offense level is 12.

   c) Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to USSG §3E1.1(a).

   d) In accordance with the foregoing, the defendant's offense level is 10.

   e) Based upon the information available to the Government, the defendant has 7 criminal history points and his Criminal History Category is IV.

   f) Based upon the calculations set forth above, assuming the defendant clearly demonstrates acceptance of responsibility as outlined above, the defendant's sentencing range is 15 to 21 months of imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to USSG §5E1.2. At offense level 10, the applicable fine range is $4,000 to $40,000.

### Adjustment to Incarceration

5. The defendant has incurred no disciplinary record to date. According to defense counsel, Valles enrolled in MCC New York's Suicide Watch Companion Program and was placed on the waiting list. He also enrolled in a psychology course.

Valles, Andrew                              4                        P6397423 - Frankelis, Emily

### The Offense Conduct

6.    The following information was obtained from case materials and contact with the
      Government and the case agent. The investigation of the offense was conducted by the U.S.
      Marshals Service (USMS).

7.    On October 12, 2004, **ANDREW VALLES** pled guilty in Salt Lake County 3rd District
      Court to two counts of Lewdness Involving a Child and two counts of Attempted Deal in
      Harmful Material to a Minor (all Class A misdemeanors). As a result of these convictions,
      under Utah law, **VALLES** was required to register as a Tier I sex offender for a period of
      ten years following his release from imprisonment.

8.    **VALLES** was released from prison in July 2006.  On July 10, 2006, **VALLES** completed
      and signed a Utah State Sex Offender Registration Form which stated that he had been
      notified of his responsibility to register as a sex offender as required by Utah Code
      Annotated 77-27-21.5, and that he had also been notified of his continuing responsibility
      to annually register with the Utah Department of Corrections and again within 10 days of
      every change in his place of habitation.

9.    The form further advised **VALLES** that sex offenders shall report "Within Ten (10) days
      of any change in residence. . . . [i]ncluding relocation out of the State of Utah." The form
      also stated that "[s]ex offenders are required to make notification to the state or territorial
      agencies in the states where the registrant presently resides and plans to reside when
      moving across state lines." **VALLES** signed the form acknowledging these requirements.

10.   Following the completion of **VALLES'S** term of imprisonment in July 2006, **VALLES**
      was required to register with the Utah Sex and Kidnap Offender Registration Program bi-
      annually for a period of ten years. Following his initial registration on July 10, 2006,
      **VALLES** failed to register under this program.

11.   On May 3, 2018, members of the USMS, New York/New Jersey Regional Fugitive Task
      Force executed an arrest warrant for **VALLES** at the request of the USMS in the District
      of California, San Diego, in connection with a warrant related to a 194-count Indictment.
      **VALLES** was arrested in New York, New York and was subsequently transferred to
      California.

12.   **VALLES** was read his *Miranda* rights following his arrest. He acknowledged his rights
      and agreed to speak to investigators. During his post-arrest interview, **VALLES** stated that
      over the previous ten years he had lived in various states, including Washington, Nevada,
      Arizona, California, and New York. He said he had lived in New York for the last two
      years. **VALLES** had not registered as a sex offender for approximately the past ten years.

13.   The USMS found no information indicating that **VALLES** had registered or updated his
      sex offender registration information in New York or Utah since July 12, 2006.

14.   **VALLES** was arrested for the instant offense while in California state custody on July 15,
      2019.

Valles, Andrew                                     5                         P6397423 - Frankelis, Emily

### Victim Impact

15.   This is a Title 18 offense and there is no identifiable victim.

### Adjustment for Obstruction of Justice

16.   The probation officer has no information indicating the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

17.   At the request of defense counsel, the instant offense was not discussed during the defendant's presentence interview. During his plea allocution, Valles stated that from July 2006 through July 2016, he was required to register as a sex offender. He admitted that he traveled across state lines to California and to New York during this time period and knowingly failed to register and update his registration. He disclosed that he knew that failing to register was against the law. He apologized and said he was very sorry.

### Offense Level Computation

18.   The November 1, 2018, Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

### Count 1: FAILURE TO REGISTER AS A SEX OFFENDER

19.   **Base Offense Level:** The guideline applicable to a violation of 18 U.S.C. § 2250 of this type is USSG §2A3.5. Because the defendant was required to register as a Tier I offender, the base offense level is 12. USSG §2A3.5(a)(3).                          **12**

20.   **Specific Offense Characteristics:**  None.                          **0**

21.   **Victim Related Adjustment:** None.                          **0**

22.   **Adjustment for Role in the Offense:** None.                          **0**

23.   **Adjustment for Obstruction of Justice:** None.                          **0**

24.   **Adjusted Offense Level (Subtotal):**                          **12**

25.   **Chapter Four Enhancement:** None.                          **0**

26.   **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).                          **-2**

27.   **Total Offense Level:**                          **10**

Valles, Andrew                        6                    P6397423 - Frankelis, Emily

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

28.    None known.

### Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 29. | 04/22/2004 (Age 26) | Lewdness Involving a Child (2 counts); Attempted Deal in Harmful Material to a Minor (2 counts); Salt Lake County 3rd District Court, Salt Lake City, UT (case # 031905567) | 10/12/2004: Pled guilty<br><br>01/27/2005: Sentenced to 365 days of imprisonment on each count, all terms to run consecutively, with 365 days suspended (defendant to serve a total of 1095 days); total fine of $5,000; 36 months of probation; 100 hours of community service<br><br>11/08/2006: Probation violation filed; $15,000 bench warrant issued<br><br>01/31/2007: $15,000 bench warrant recalled, $25,000 bench warrant issued<br><br>01/31/2010: Warrant recalled (expiration date)<br><br>05/21/2018: $25,000 bench warrant issued | 4A1.1(a) 4A1.2(e)(1) | 3 |

30.    The defendant was arrested on a fugitive warrant in Washington on April 4, 2004. He was extradited to Utah on April 22, 2004.

31.    Court records state that the offenses occurred from July 1, 2002, through June 1, 2003. According to police records, the victims were interviewed on June 26, 2003. For several

Valles, Andrew                              7                    P6397423 - Frankelis, Emily

months, Valles had stayed in the home of the two male victims, approximate ages 13 and 11. The boys did not report the abuse until Valles had moved out. About one month after Valles moved in with the boys and their parents, Valles started showing the boys Playboy videos depicting naked women. The elder victim once woke up to Valles masturbating next to him, on the bottom bed of a bunk bed where he and the defendant were sleeping; the younger boy slept on the top bunk. After that, the elder boy started to sleep on the couch; however, the defendant would give him massages over his clothes and grab his scrotum and tug on it to "loose up some of his back muscles." Valles also grabbed the elder boy's "privates" over his clothes.

32.    In addition to the Playboy videos, the defendant showed the younger victim pornography involving men and women on the computer. Around Christmas time, Valles gave him some beer to drink. After his older brother started sleeping on the couch, the younger victim began sleeping on the lower bunk (which was bigger) with the defendant. Valles gave the younger boy massages, made him take off all his clothes, and would rub his scrotum and the area between his testicles and his anus. The defendant also touched his penis. The younger boy said this had happened several times.

33.    The police expressed concern that the younger victim had not disclosed all of the abuse and suggested that his mother take him to Primary Children's Hospital to be examined. No information regarding whether the mother did so was provided.

34.    The following special conditions of probation were imposed: submit to searches of person and property upon the request of any law enforcement officer; violate no laws; enter, participate in, and complete any program, counseling, or treatment as directed by the Department of Adult Probation and Parole; defendant is to have no contact with the victims or victims' family; defendant is not to be within 1,500 feet of the victims' residence; the defendant is also advised that he is not to call, email, write or have a third party contact the victims; defendant is to complete sex offender treatment; defendant is to comply with all "Group A Sex Offender Conditions"; and defendant is advised that he will be responsible for the victims' and victims' family's counseling and for extradition costs. According to defense counsel, on April 24, 2008, the defendant's supervision was transferred from the Department of Adult Probation and Parole to "court probation."

35.    Valles violated the conditions of his probation by moving near a school and not reporting the move to his probation officer, by failing to pay his financial obligations, and by not being amenable to treatment.

36.    According to court records, after the initial bench warrant was issued on November 8, 2006, Valles failed to report to probation in November. He called on December 1, 2006 and stated that he knew of the warrant, but he would not report until his hearing.

Valles, Andrew                          8                    P6397423 - Frankelis, Emily

| 37. | 05/17/2018 (Age 40) | Conspiracy to Commit Procuring or Offering a False or Fraudulent Instrument for Record; Conspiracy to Commit Grand Theft (6 counts); Grand Theft (5 counts); Procure/Offer False and Forged Instrument to be Filed; San Diego County Superior Court, San Diego, CA (case # SCD266438) | 08/27/2018: Pled guilty

05/15/2019: Sentenced to 13 years of imprisonment and $2,342,957.87 in restitution | 4A1.1(a) 4A1.2(e)(1) | 3 |

38.   Valles was arrested on May 3, 2018, in New York, on a warrant out of California. He was transferred to California on May 17, 2018.

39.   According to court records and the San Diego County Probation Department's stipulated sentence report, the defendant and three codefendants – Jemal Ardess Lilly, Mark Allen Bellinger, and Arnold Stephen Millman – were charged in a 194-count Indictment with two sentencing enhancements.

40.   The case involved a mortgage fraud advance fee scheme and a "bankruptcy dumping" conspiracy. The defendants convinced distressed homeowners or new home buyers that they could provide a home loan through a complicated legal process. In reality, the defendants took advance fees from the victims and did not provide any loans. Valles was the leader of the advance fee scheme, which was run via his business, SafeCare of San Francisco. Valles ran seminars explaining his program and convinced victims to part with their money. He created a website and false promotional materials. He recruited other promoters to bring in numerous victims. When the financing did not come through, victims who had paid all of their money to the defendants faced foreclosure and eviction actions. Valles then referred the victims to Bellinger, who pretended to be a lawyer. The defendants then filed numerous false bankruptcy and court documents that merely delayed foreclosure and eviction, and clouded titles on homes.

41.   Valles admitted as true a sentencing enhancement for Excessive Loss Over $500,000. In total, there were 117 victims. The stipulated loss was $2,342,957.87.

**Criminal History Computation**

42.   The criminal convictions above result in a subtotal criminal history score of six.

43.   The defendant committed the instant offense while on probation for the underlying sex offense; therefore, two points are added. USSG §4A1.1(d).

Valles, Andrew                          9                    P6397423 - Frankelis, Emily

44.    The total criminal history score is eight. According to the sentencing table in USSG
       Chapter 5, Part A, a criminal history score of eight establishes a criminal history category
       of IV.

       **Other Criminal Conduct**

45.    None known.

       **Pending Charges**

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 46. | 06/28/2001 (Age 24) | Burglary; Attempt Theft | Clark County Justice Court, Las Vegas Township, NV (case # 01F10856X) | 01/15/2002: Bench warrant issued |

47.    According to the arrest report and court documents, on June 28, 2001, Valles allegedly
       used the identifying information of another individual to open an account at Fleet Services
       Bank, and then wire transferred $150,000 from the account to the MGM Hotel & Casino,
       located at 3799 Las Vegas Boulevard South in Las Vegas, Nevada. Valles subsequently
       attempted to obtain the funds from the hotel. The defendant admitted that he had purchased
       a book that explained how to commit identity theft, and that he had intended to make cash
       withdrawals and use some of the money for gambling and having a good time in Las Vegas.

48.    The warrant remains active and is serviceable in the State of Nevada.

       **Other Arrests**

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 49. | 04/04/2004 (Age 26) | Fugitive Warrant | Whatcom County Superior Court, Bellingham, WA (case # 04-1-00445-7) | 04/22/2004: Extradited to Utah |

50.    The defendant was arrested on a fugitive warrant from Utah regarding the sex offenses
       underlying the instant case. He waived extradition and was extradited to Utah on April 22,
       2004.

# PART C. OFFENDER CHARACTERISTICS

**Personal and Family Data**

51.    Andrew Don Valles III was reportedly born in Fresno, California on June 21, 1977.
       Verification was requested from the Vital Records Department in the County of Fresno;

the response received indicated that a $25 fee was required, and therefore verification was not provided. The defendant is the eldest of three sons born to Mary Helen (nee Silva) and Don Andrew Valles Jr. (Despite that his name is not the same as his father's, the defendant affirmed that he has the suffix III.) Valles's parents are both recently deceased. His father, formerly an engineer, reportedly died of pulmonary failure in October 2015, at the age of 59. Valles said his mother succumbed to cancer and related complications in June 2018, at the age of 61. Throughout her life, she had been employed doing accounting, clerical work, data entry, and as a legal secretary. Valles's younger brothers are Philip Julio Valles (age 36) and Emilio Estevan Valles (age 29). The defendant said he suspects they both live in Fresno; he did not know their occupations.

52.   The defendant related that his parents separated in 2004 and divorced in about 2005. He stated that he lived with both of his parents until the age of 15, when he left home and "never looked back." He noted that he was not legally emancipated from his parents. Valles explained that "From birth until roughly age six, I was the prince of the household." He reported that after that, his childhood was "highly tumultuous and violently abusive." According to Valles, his father, who was an alcoholic, inflicted every type of abuse imaginable, except sexual – "Neighbors did that." The defendant mentioned one incident before school when he was in eighth grade, when his father punched him in the eye while he was wearing glasses. He subsequently related, through counsel, that this matter was reported to the Fresno County Sherriff's Department in April 1991 by his school, and was then referred to the local office of Child Protective Services. According to the defendant, the matter was dropped after Valles refused to testify against his father, although the bruising around his eye was well documented.

53.   According to the defendant, starting when he was five years old, two teenage siblings who lived across the street – Max and Catherine Lopez – watched him in the afternoons/evenings while his parents worked; they sometimes stayed with him overnight. Valles reported that he was forced to perform fellatio on Max and cunnilingus on Catherine; he was also forced to penetrate Catherine vaginally. He was raped by Max on frequent occasions, and endured rectal bleeding for years afterwards. He was too ashamed to say anything to anyone, and thus kept it to himself. The defendant said the abuse continued for about five years, from 1982 to 1987, and only stopped because Valles and his family moved. In addition to being ashamed, Valles related that he did not tell his parents of the abuse because, "Who are they going to believe?" He also feared being beaten by his father, and ramifications from his abusers, if he told. The defendant also noted that he had heard his father scream at his mother and sexually assault her, so he knew, "This is something you just can't talk about." He added that there was a stigma against discussing such things in the area of Fresno where he grew up.

54.   Regarding his relationship with his brothers, the defendant related that he was told that as the eldest, he was responsible for his younger siblings. Therefore, anything his brothers did wrong, he was held accountable for. Valles said he nonetheless cared for his brothers and watched out for them. "Basically, I was a surrogate parent." Valles indicated that his brothers' lack of appreciation for him is the reason that he is now estranged from them. In addition, Valles believes his brothers are bitter toward him because prior to his mother's death, he advocated for her to receive her due portion of their father's estate.

Valles, Andrew                            11                  P6397423 - Frankelis, Emily

55.   When asked if he observes any religion, Valles replied that he is a "spiritual person" but he does not follow any organized religion. He subsequently added that he nonetheless respects others' faith without judgment.

56.   The defendant described his family's financial situation while he was growing up as "uneven" and "inequitable." He explained that his father earned three times as much as his mother, yet his mother was required to pay half of the household expenses. Valles stated that when he or his brothers needed new clothes, or he needed new glasses, there was always a "war" over who would pay for them. However, he remarked that his father was always "immaculately tailored and well groomed." Valles also noted that when he started earning money of his own, even significant amounts, he did not "see" any of it.

57.   Valles reportedly left home at the age of 15, after a confrontation with his father culminated in his father holding a gun to his head. The defendant related that he moved from Fresno to San Francisco, California and was homeless for about a year. He thereafter lived with his "grandparents" (they were family friends, not relatives) in Fresno from the ages of 16 to 19.

58.   Valles reported that he has never been married and he does not have any children. He said he is not currently involved in a significant relationship.

59.   The defendant reported having lived in California, New York, and "various [other] locations," primarily on the West Coast. According to a post-arrest interview following his arrest on May 3, 2018, Valles has also resided in Washington, Nevada, and Arizona. During his instant presentence interview, Valles noted that he has traveled around the world through his work and has visited more than 60 countries. Prior to his instant incarceration – from July 2017 to May 2018 – the defendant reportedly resided at 351 West 24th Street, Apartment 1B, in New York, New York, with his former friend, James Graniela. Valles said he will not return there upon his release – "I am not welcome there." For this reason, and because Valles has an undischarged 13-year term of imprisonment for his California conviction, a home inspection was not conducted. The defendant related that he hopes to return to New York following completion of his sentence in California.

**Physical Condition**

60.   The defendant reportedly stands about 5'9" tall and weighs approximately 150 pounds. He has brown eyes and black hair. He wears glasses throughout the day, as he reported that he is "acutely" nearsighted. Valles said he has no tattoos. He related that he has scars on the following parts of his body, all from cigarette burns, iron burns, or beatings inflicted by his father: near his left ear, under his nose, under his chin, on his left calf, on his right forearm, and on his right shoulder.

61.   Valles stated that he is in "perfect" health, with no chronic conditions. He reported no history of hospitalization, and no surgery other than tooth extractions.

62.   The defendant stated that he is allergic to gluten.

### Mental and Emotional Health

63.   According to the defendant, in 1998, a teacher, who was also a school psychologist, told him that he suffered from post-traumatic stress disorder and Stockholm syndrome. (Merriam-Webster defines Stockholm syndrome as "the psychological tendency of a hostage to bond with, identify with, or sympathize with his or her captor.") Valles related that this was not said to him in a doctor/patient setting, as he never met with the woman, whose name was Alice Silverman, as a patient. He explained that she was his fourth, fifth, and sixth grade teacher and he trusted her, so he talked to her about what was happening to him at home; he stated that this was prior to when laws required teachers to report abuse. Valles said he never saw Dr. Silverman, or anyone else, officially as a patient, because Dr. Silverman told him there was no cure or therapy for his conditions. Therefore, he "felt no need to" and he chose not to dwell on the past.

64.   Valles was ordered to complete sex offender treatment as a condition of his probation imposed in Utah. He was subsequently violated, in part, due to not being amenable to treatment. The defendant related that he was skeptical of treatment in the past because of his own trauma, but he is now willing to engage in treatment.

65.   When asked whether he gambles, Valles stated that from 1996 to 1999, he gambled at least once a month; he said he did so "off and on" thereafter. The defendant related that he played "craps" in Las Vegas, Nevada, and he risked between $500 and $2,000. He said he never felt it was out of his control. According to Valles, he no longer gambles, as "Life is enough of a gamble."

### Substance Abuse

66.   The defendant reported that he consumes alcoholic beverages on Christmas and New Year's Eve. He said he does not drink to the point of intoxication. Valles noted that he does not drink during the rest of the year due to training for triathlons and because of his profession – "You have to be focused."

67.   Valles stated that he used marijuana daily between the ages of 23 and 24. He said he stopped because he did not enjoy it; he explained that he got involved in using marijuana because it was "a social, rebellious thing to do." He noted that during the past 20-or-so years, he used "edibles" containing CBD oil approximately four times, when he was in extreme pain.

68.   According to the defendant, he used cocaine and MDMA one time each, on December 28, 2006, and April 5, 2016, respectively. He remarked that cocaine "scared the hell out of me." He later added that he has no intention of using MDMA again.

69.   Valles said he has never had treatment for substance abuse.

### Educational, Vocational and Special Skills

70.   The defendant reportedly attended Winchell Elementary School, Edison Computech Middle School, and Edison High School, all located in Fresno, California. He indicated

Valles, Andrew                    13                P6397423 - Frankelis, Emily

that he graduated from high school in June 1995. Verification was requested from each school; no responses have been received to date.

71.    Information received from Fresno City College showed that Valles was enrolled there from August 1996 to May 2000. His cumulative GPA was 1.094. He did not earn a degree. The defendant reported that he had attended from August 1993 to May 1996; he said he took classes there as part of his high school curriculum.

72.    The defendant reportedly attended California State University in Fresno from January 1996 to May 1996. Verification was requested from the school but has not been received to date.

73.    According to the defendant, he attended the University of California at Davis from August 1996 to June 1997, and the University of California at Berkeley from August 1997 to March 2000. He related that he studied civil engineering, land survey engineering, and mathematics at the latter school. He did not graduate. Verification was requested from both universities. Neither UC Davis nor UC Berkeley had any record of the defendant. Valles subsequently explained that he audited courses at both schools and was not formally enrolled.

74.    The defendant stated that he is skilled/knowledgeable in computer programming; physical network design – cable, fiberoptic, and satellite; general building construction; financial analysis; international relations; and political legislative advocacy.

**Employment Record**

75.    From 2004 until his arrest in 2018, Valles was reportedly self-employed as a financial auditor for insurance companies, and he underwrote contracts for insurance and finance agencies. He said he earned about $5,000 per month, and he had no employees. From about 2009 to 2017, he worked under the business name SafeCare, through which he perpetrated the schemes that led to his conviction in California. Valles explained that the business "wound down" because there was "no further it could go." He stated that it was too old and could not keep up with regulatory changes. According to defense counsel, the defendant traveled frequently between 2006 and 2011, "as he took whatever job he could find as a means to survive." Counsel added that "Valles lived in a number of different states, and regrets not updating his sex-offender registration as he was required to do."

76.    The defendant reported that from 2003 to 2004, he was employed with American Express Financial Advisors, now known as Ameriprise Financial. He said he worked in various locations, including Utah, Minnesota, and Germany. He reportedly earned $6,800 to $7,000 per month, plus commissions. He said his most recent title was Senior Analyst, and he left the position due to his arrest for the sex offenses underlying the instant case. Verification was requested from Ameriprise Financial's headquarters in Minneapolis, Minnesota. The response received stated that Valles was employed with the company from May 2003 to June 12, 2003. He earned $13,728 as a "PI Advisor." Per company policy, they did not provide the reason for termination of his employment.

77.    From 1997 to 2000, the defendant was reportedly employed as an engineer at Bechtel Corporation in San Francisco, California. We found no address in San Francisco on the

company's website; verification was requested from its headquarters in Reston, Virginia. The response stated, "No records or W2s found." Valles subsequently explained that he worked for Bechtel as an independent contractor.

78.    According to Valles, from 1991 to 1997 (while in high school and college), he worked as a contractor/engineer at TCI International in Fremont, California. Verification was requested from the company but has not been received to date.

79.    Valles noted that from 1987 to 1990, he did part-time work for the Fresno Cable Company.

### Financial Condition: Ability to Pay

80.    On his personal financial statement, dated October 1, 2019, the defendant reported no assets and no known liabilities. He noted, however, that he is expecting to receive $35,000 from his father's estate and an unknown amount from his mother's estate. Valles currently has no income or necessary expenses, due to being incarcerated.

81.    In response to a question regarding involvement in civil suits, Valles replied that he imagines by now there are "several dozen" filed against him in relation to his California case.

82.    An Equifax credit report dated October 2, 2019, showed that Valles owed $809 on a portfolio recovery (factoring company/debt buyer) collection account.

83.    The IRS had no record of the defendant having filed income tax returns for the tax years 2016, 2017, or 2018.

84.    Based on available information, it appears the defendant would be unable to pay a fine.

## PART D. SENTENCING OPTIONS

### Custody

85.    **Statutory Provisions:** The maximum term of imprisonment is 10 years. 18 U.S.C. § 2250.

86.    **Guideline Provisions:** Based upon a total offense level of 10 and a criminal history category of IV, the guideline imprisonment range is 15 to 21 months.

87.    The sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. USSG §5G1.3(d).

### Impact of Plea Agreement

88.    Not applicable.

Valles, Andrew                          15                P6397423 - Frankelis, Emily

### Supervised Release

89.   **Statutory Provisions:**  The Court shall impose a term of supervised release of 5 years to life. 18 U.S.C. § 3583(k).

90.   **Guideline Provisions:** The statute requires a term of supervised release of at least 5 years; therefore, the guideline requirement for a term of supervised release is 5 years. USSG §5D1.2(c).

### Probation

91.   **Statutory Provisions:**  The defendant is eligible for not less than 1 nor more than 5 years of probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1).

92.   **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment. (n.2).

### Fines

93.   **Statutory Provisions:**  The maximum fine is $250,000. 18 U.S.C. § 3571(b)(3).

94.   A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

95.   **Guideline Provisions:** The fine range for this offense is from $4,000 to $40,000. USSG §5E1.2(c)(3).

96.   Costs of prosecution shall be imposed on the defendant as required by statute. USSG §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated July 1, 2019, provides the following monthly cost data:

|          | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer |
|----------|------------------------------|------------------------------|----------------------------------|
| Daily    | $103.00                      | $95.00                       | $12.00                           |
| Monthly  | $3,121.00                    | $2,874.00                    | $373.00                          |
| Annually | $37,448.00                   | $34,493.00                   | $4,472.00                        |

### Restitution

97.   Not applicable.

Valles, Andrew                          16                     P6397423 - Frankelis, Emily

### Denial of Federal Benefits

98.    Not applicable.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

99.    The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

100.    The probation officer has not identified any factors that would warrant a variance from the applicable sentencing guideline range.


                                        Respectfully Submitted,

                                        Michael J. Fitzpatrick
                                        Chief U.S. Probation Officer



                          By:     Emily P. Frankelis
                                        USPO Specialist



Approved:


Jineen M. Forbes
SUSPO

Valles, Andrew                                17                    P6397423 - Frankelis, Emily

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### UNITED STATES V. ANDREW VALLES, DKT. 0208 1:19 CR 672-01 (WHP)

### OBJECTIONS

### By the Government

No objections have been received from the Government to date.

### By the Defendant

Additional/clarifying information provided by defense counsel was added in paragraphs 5, 7, 34, 51 through 55, 57, 59, 63, 64, 68, 71, 73, 75, and 77.

Based on a comment made by defense counsel and documentation supplied by the Government, paragraph 10 was corrected to cite Valles's initial registration date as July 10, 2006.

Mr. Cohen asked that paragraphs 31 to 33 and paragraphs 39 and 40 be removed, as they are allegedly "not relevant to the charged offense." However, pursuant to § 335.40(b)(2) of the Administrative Office of the U.S. Courts' Monograph 107, *The Presentence Investigation Report*, following each entry under criminal convictions, "a paragraph provides details about the conviction…." A description of the offense, including relevant conduct, is as appropriate for prior criminal convictions as it is for the instant offense. Therefore, the paragraphs remain.

Defense counsel also requested that paragraphs 46 through 50 be removed, again stating that they are "not relevant to the charged offense." The aforementioned Monograph 107 also states, "In Pending Charges, the officer lists all other criminal charges pending against the offender…. The jurisdiction, charges, and status of each pending case are reported. A brief synopsis of any pending charge is presented to assess the defendant's propensity to commit future crimes. The information contained in this section of the report assists the court in evaluating the adequacy of the criminal history category in assessing the defendant's likelihood to commit future crimes and, as such, it is important in assessing risk factors and in determining whether a departure may be warranted." § 335.70(a)(1)-(3) and (b). Monograph 107 further directs that under the heading Other Arrests, "Report all other arrests of the defendant, unless the arrest was based on mistaken identity. Report the date of arrest, charge(s), agency, and disposition. This informs the court about the defendant's contact with law enforcement authorities." § 335.80. As such, these paragraphs also remain.

### OTHER REVISIONS

Paragraph 51 was amended to note that the County of Fresno required a $25 fee to verify the defendant's date of birth, and therefore verification was not received.

Valles, Andrew                     18                P6397423 - Frankelis, Emily

Information received from the IRS was included in paragraph 83.

                                        Respectfully Submitted,

                                        Michael J. Fitzpatrick
                                        Chief U.S. Probation Officer


                          By:    Emily P. Frankelis
                                 USPO Specialist


Approved:


Jineen M. Forbes
SUSPO

Valles, Andrew                    19                    P6397423 - Frankelis, Emily

## SENTENCING RECOMMENDATION

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### UNITED STATES V. ANDREW VALLES, DKT. 0208 1:19 CR 672-01 (WHP)

TOTAL OFFENSE LEVEL                          10
CRIMINAL HISTORY CATEGORY                     IV

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| **CUSTODY:** | Maximum of 10 years | 15 to 21 months | 15 months to run consecutively to the undischarged term of imprisonment imposed in CA |
| **SUPERVISED RELEASE:** | 5 years to life | 5 years | 5 years |
| **PROBATION:** | 1 to 5 years | Ineligible | None |
| **FINE:** | Maximum of $250,000 | $4,000 to $40,000 | None |
| **RESTITUTION:** | Not applicable | Not applicable | Not applicable |
| **SPECIAL ASSESSMENT:** | $100 | $100 | $100 |

### Justification

Andrew Valles appears before this Court to be sentenced for failing to register as a sex offender. The instant offense represents this 42-year-old defendant's third criminal conviction known to this probation office. Valles's underlying sex offenses, out of Salt Lake City, Utah, consisted of two counts of lewdness involving a child and two counts of attempted dealing in harmful material to a minor. The two male victims were approximately 11 and 13. The defendant was sentenced to (among other sanctions) a total of 1,095 days of imprisonment and 36 months of probation. Valles violated the conditions of his probation by moving near a school and not reporting the move to his probation officer, by failing to pay his financial obligations, and by not being amenable to treatment. He also committed the instant offense was under this term of supervision.

The defendant's other prior offense, which resulted in 13 counts of conviction, involved a mortgage fraud advance fee scheme and a "bankruptcy dumping" conspiracy. Valles is currently serving an undischarged 13-year term of imprisonment imposed in San Diego, California. He was also ordered to pay more than $2.3 million in restitution.

Additionally, the defendant has a case pending in Las Vegas, Nevada, on charges of burglary and attempted theft. Valles allegedly used the identifying information of another individual to open a bank account, then he reportedly wire transferred $150,000 from the account to the MGM Hotel & Casino in Las Vegas, and subsequently attempted to obtain the funds from the hotel.

In the instant case, Valles failed to register or update his sex offender registration information in New York or Utah following his initial registration in July 2006.

The defendant reported that from the approximate ages of six to fifteen, his childhood was "highly tumultuous and violently abusive." He stated that his father, who was an alcoholic, inflicted every type of abuse imaginable, except sexual – "Neighbors did that." According to the defendant, starting when he was five years old, two teenage siblings who lived across the street from him – a male and a female – sexually abused him over an approximate five-year period. He said he was too ashamed to say anything to anyone, and thus kept it to himself. He also feared being beaten by his father, and ramifications from his abusers, if he told. Valles's parents are now deceased, and he is estranged from his two younger brothers. The defendant stated that he has never been married and he does not have any children. He reported that he is not currently involved in a significant relationship.

Valles attended some college but did not earn a degree. From 2004 until his arrest in 2018, he was reportedly self-employed as a financial auditor for insurance companies, and he underwrote contracts for insurance and finance agencies.

The gravity and variety of the defendant's prior criminal conduct is concerning, as is his violation of probation and his formerly being unamenable to sex offender treatment. We therefore believe a sentence of 15 months of imprisonment would be sufficient, but not greater than necessary, to comply with the factors to be considered in imposing a sentence outlined in 18 U.S.C. § 3553(a), including providing just punishment for the offense, affording adequate deterrence to criminal conduct, and protecting the public from further crimes of the defendant. We recommend that the defendant's sentence be imposed to run consecutively to his undischarged term of imprisonment in California. As the two cases are completely unrelated, running the sentences concurrently would essentially render the instant offense unpunished; a partially concurrent sentence would effectively be a variance to which we do not believe the defendant is entitled.

A five-year term of supervised release is mandatory. Special conditions requiring the defendant to undergo a sex-offense-specific evaluation and treatment, and to avoid contact with children under 18 years of age, are recommended based on Valles's underlying sex offense which involved hands-on contact with minor children.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, for offenses committed after September 13, 1994, the court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 USC 3563(a)(5)/3583(d).

Valles, Andrew                         21                    P6397423 - Frankelis, Emily

**Drug Risk Analysis**

Valles reported that he used marijuana daily between the ages of 23 and 24, and he used "edibles" containing CBD oil approximately four times during the past 20-or-so years. He said he used cocaine and MDMA one time each, on December 28, 2006, and April 5, 2016, respectively. We do not believe a special drug testing condition is warranted, but imposition of the mandatory drug testing condition is recommended.

**Recommendation**

We respectfully recommend that Your Honor impose a sentence of 15 months of imprisonment and 5 years of supervised release.

**Mandatory Conditions**

A period of supervised release is ordered, and the following conditions are mandatory:

You must not commit another federal, state, or local crime.

You must not unlawfully possess a controlled substance.

You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.

You must cooperate in the collection of DNA, as directed by the probation officer.

You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**Standard Conditions**

1.    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.    After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

Valles, Andrew                          22                    P6397423 - Frankelis, Emily

3.      You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.      You must answer truthfully the questions asked by your probation officer.

5.      You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.      You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.      You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.      You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.      If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.     You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11.     You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12.     You must follow the instructions of the probation officer related to the conditions of supervision.

Valles, Andrew                          23                    P6397423 - Frankelis, Emily

## Special Conditions

1. You shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the U.S. Probation Office. You shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to polygraph testing and refraining from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to your ongoing treatment. You will not view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider. You must waive your right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the U.S. Probation Office to review the course of treatment and progress with the treatment provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the sex offender treatment provider and/or mental health treatment provider.

2. You must not have deliberate contact with any child under 18 years of age, unless approved by the U.S. Probation Office. You must not loiter within 100 feet of places regularly frequented by children under the age of 18, such as schoolyards, playgrounds, and arcades. You must not view and/or access any web profile of users under the age of 18. This includes, but is not limited to, social networking websites, community portals, chat rooms or other online environment(audio/visual/messaging), etc. which allows for real time interaction with other users, without prior approval from your probation officer.

If you are sentenced to any period of supervision, it is recommended that you be supervised by the district of residence.

## Special Assessment

It is further ordered that you must pay to the United States a special assessment of $100, which shall be due immediately.

## Restitution

Restitution is not applicable in this case.

## Fines

We believe that the defendant does not have the ability to pay a fine and recommend that the fine in this case be waived.

Valles, Andrew                          24                    P6397423 - Frankelis, Emily

**<u>Voluntary Surrender</u>**

The defendant has been detained without bail since his arrest, and he is currently serving an undischarged term of imprisonment. Therefore, he is not a suitable candidate for voluntary surrender.

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer


By:    Emily P. Frankelis
       USPO Specialist


Approved:

Jineen M. Forbes
SUSPO

Exhibit 3 - B



CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**

# NOTICE OF DETAINER (PLACED BY CDCR)

To: US Marshal - Central District of California    From: California Institution for Men    Date: 07/15/2019
Transportation Agency: US MARSHAL
Re: VALLES, ANDREW                                                              CDC#: BJ6191
AKAs:

Please accept this detainer against the above named subject who is presently in your custody and who is wanted by the California Department of Corrections and Rehabilitation (CDCR) for the reason checked below:

   ☐ CDCR's prisoner released to you under the interstate agreement on detainers.
   ☐ CDCR's prisoner released to you under an executive agreement between governors.
   ☐ CDCR's prisoner released to you under the Uniform Act to secure the attendance of witnesses from without the State in criminal acts.
   ☐ CDCR's prisoner released to you for service of _____ sentences between California and your agency/department.
   ☑ CDCR's prisoner released to you for trial or witness in a criminal case or civil proceedings in a parental or marital case. US MARSHAL    COUNTY CASE NUMBER 18MAG.4725
   ☑ ATTACHED IS A CERTIFIED COPY OF THE COMMITMENT ON WHICH THIS DETAINER IS BASED. SCD266438

**DO NOT RELEASE BEFORE CALLING: (909)597-1821 X6055**
--If subject is transferred from your custody to another detention facility, we request that you forward our detainer to said facility at the time of transfer and advise this office.
--If subject escapes or dies, please contact the undersigned immediately.

☐ PC Section 3058.6 required          ☐ PC Section 290 required          ☐ Lifer
☐ Wanted by other agencies:          U.S. Marshal

ADDITIONAL CUSTODY INFORMATION:

CDCR Housing Concerns:                                        Behavioral Concerns:
☐ I ☑ II ☐ III ☐ IV (High Security)                          ☐ Danger to Other Inmates
☐ Segregated Housing          ☐ Safety Concerns              ☐ Danger to Officers
☐ Single Cell                 ☐ Escape Risk
☐ Reason for Segregated Housing:
☐ Other Significant Concerns:

Please acknowledge receipt of this detainer on the copy attached upon receipt of inmate or by returning signed copy using the enclosed self-addressed envelope.

Receipt:                                                       CDCR DIRECTOR OF ADULT INSTITUTIONS

                                                               By: Demorst, Deeann M. [DEDE002]
_____
          Signature

                                                               Title: CORRECTIONAL CASE RECORD ANALYST
_____
          Title

                                                               Phone Number: (909)597-1821 6053
_____
          Date

**NOTICE OF DETAINER (PLACED BY CDCR)**

CDC: BJ6191                      Name: VALLES, ANDREW                                    1 of 2

Name: VALLES, ANDREW                                        CDC #: BJ6191  PID #: 12211599

OTRS044B                    **Detainer/Notification**            Monday August 02, 2021 10:49:34 AM

Date Placed: 07/09/2019                          Sequence #: 001
Detainer/Notification Type: Detainer
Reason: Untried Charges
Agency Type: US Marshal and other Federal Agencies
Agency Name: U.S. Marshal
Contact Information:
Warrant/Case #: 18MJ4725
Bail Amount $:    0
Detainer Issued Date: 06/01/2018
Expiration Date:

| **Physical Address** | |
|---|---|
| 600 Army Navy Drive | ⌃ |
| Arlington, Virginia   22202 | ⌄ |

| **Mailing Address** | |
|---|---|
| 600 Army Navy Drive | ⌃ |
| Arlington, Virginia   22202 | ⌄ |

Telephone Numbers

| Type | Phone Number | Extension |
|---|---|---|
| | No Rows Found | |

Status: Active                    As of Date: 07/09/2019

Charges (1 - 1 of 1)

| Offense | Crime Type | Court Status | Disposition |
|---|---|---|---|
| FAILURE TO REGISTER AS SEX OFFENDER | Felony | Pending | |

Comments

Reviewed
TimeStamp: 10 July 2019 07:15:27 --- User: Mark Adour (ADMA002)

Actions Taken (1 - 2 of 2)

| Date | Staff | Type | Related Form | Comments |
|---|---|---|---|---|
| 07/09/2019 | 100036771 | Reviewer Contacted by Records | | None |
| 07/09/2019 | 100036771 | Detainer Received by Records | | None |

Related Standard Forms

| Date Prepared | Time Prepared | Type of Form | Staff Prepared By | Status |
|---|---|---|---|---|

CDC: BJ6191                      Name: VALLES, ANDREW                                    1 of 2

No Rows Found

**Scanned Documents** (1 - 1 of 1)

| C-File Section Code | Document Type | Sub-Type | Document Date | Status |
|---|---|---|---|---|
| HWD | Detainers all docs related to specific detainer | | 6/1/2018 | Stored in ERMS |

**Prepare To Update**     **Prior Page**

Show Last Updated Information

Exhibit   3 - C



JUSTICE COURT, LAS VEGAS TOWNSHIP
200 LEWIS AVE 2ND FL - CRIMINAL DIVISION
BOX 552511
LAS VEGAS   NV   89155-2511

RETURN SERVICE REQUESTED

C-1-2120
received 7/13
July 2023
A. Vallos

Andrew Vallos
CDCR # BJ6191
Fed. Reg # 86940-054
C-A-212
P.O Box 500
Chino, CA 91708

SORTED
FIRST CLASS
US POSTAGE

LEGAL MAIL ROOM
JUL 10 2023
FAC-3

LEGAL DESK
JUL 11 2023

04   PROPMHP $1.708

CRIMINAL

# CASE SUMMARY
## CASE NO. 01F10856X

State of Nevada vs Valles, Andrew

| | |
|---|---|
| § Location: | **JC Department 8** |
| § Judicial Officer: | **Zimmerman, Ann E.** |
| § Filed on: | **11/21/2001** |
| § Appear by: | **04/25/2023** |
| § Case Number History: | |
| § DA CMS Case ID: | **18-83239** |
| § DA CMS Display ID: | **200133452C** |
| § Metro Event Number: | **0106281308** |
| § Odyssey Case ID: | **9526693** |
| § Warrant Document ID: | **2023042509461018B1E3AF28C9461D** |

---

### CASE INFORMATION

| Offense | Statute | Deg | Date | | |
|---|---|---|---|---|---|
| **Jurisdiction: Las Vegas Justice Court** | | | | Case Type: | **Felony** |
| 001. BURGLARY WITH INTENT TO COMMIT FELONY | 205.060 | F | 06/28/2001 | Case Status: | |
| PCN: 0018705058   Sequence: 002 | | | | | **04/25/2023   Dismissed** |
| 002. ATT. THEFT | 205.0832 | F | 06/28/2001 | Case Flags: | **CTRACK Update Ready** |
| PCN: 0018705058   Sequence: 001   ACN: 0106281308 | | | | | **Scope ID** |
| Arrest:   06/28/2001       LVMPD - LVMPD | | | | | ~~Original Track 08~~ |
| | | | | | **Reassignment to Department 8** |

**Statistical Closures**
04/25/2023       17 - Dismissed (before Preliminary Trial)

**Warrants**
Bench Warrant  -  Valles, Andrew (Judicial Officer: Lippis, Deborah J. )
04/25/2023       9:47 AM       Cleared - NCJIS
04/25/2023       9:45 AM       Recalled
01/15/2002                     Active - NCJIS
Fine:       $0
Bond Set:         **$8,000.00**                       **Cash**
        or       **$8,000.00**                       **Surety**

**Bonds**
Surety   #R311471233   $3,000.00
06/29/2001             Active
07/31/2000             Exonerated
Counts: 001, 002

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**
| | |
|---|---|
| Case Number | 01F10856X |
| Court | JC Department 8 |
| Date Assigned | 12/29/2022 |
| Judicial Officer | Zimmerman, Ann E. |

---

### PARTY INFORMATION

| | |
|---|---|
| **State of Nevada** | **State of Nevada** |
| **Defendant** | **Valles, Andrew** |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 04/25/2023 | **Disposition** (Judicial Officer: Pro Tempore, Judge) | |
| | 001. BURGLARY WITH INTENT TO COMMIT FELONY | |
| | Dismissed | |
| | PCN: 0018705058   Sequence: 002 | |

*Printed on 06/29/2023 at 9:08 AM*

CRIMINAL
# CASE SUMMARY
## CASE NO. 01F10856X

|  |  |  |
|---|---|---|
|  | 002. ATT. THEFT<br>    Dismissed<br>      PCN: 0018705058  Sequence: 001 |  |
| 06/29/2001 | JCON Accounting Detail<br>   *Rcpt #: 04742896*<br>   *Deft Name: AARDVAARK BAIL BONDS*<br>   *Payer Name: AARDVAARK BAIL BONDS*<br>   *Deft ID: 01690735*<br>   *Fund: 660*<br>   *Payment Type: CHK*<br>   *Location: ITK*<br>   *Case #: 01F10856X* | *Instrument#*<br>*04742896* |
| 06/29/2001 | RETURNING FOR FURTHER INVESTIGATION<br>   *RETURNING FOR FURTHER INVESTIGATION* |  |
| 06/29/2001 | BAILED/BONDED<br>   *BAILED/BONDED* |  |
| 07/10/2001 | RETURNING FOR FURTHER INVESTIGATION<br>   *RETURNING FOR FURTHER INVESTIGATION* |  |
| 07/30/2001 | COMPLAINT NOT FILED<br>   *COMPLAINT NOT FILED* |  |
| 10/04/2001 | RETURNING FOR FURTHER INVESTIGATION<br>   *RETURNING FOR FURTHER INVESTIGATION* |  |
| 11/21/2001 | TRANSFERRED TO JC<br>   *TRANSFERRED TO JC* |  |
| 11/21/2001 | CTRACK Track Assignment JC01 |  |
| 11/26/2001 | **OTHER** (8:00 AM)  (Judicial Officer: Lippis, Deborah J.) |  |
| 11/26/2001 | REC'D - NOTIFY FOR APPEARENCE (Judicial Officer: Lippis, Deborah J. )<br>   *OTHER* |  |
| 12/18/2001 | **Arraignment Summons** (8:00 AM)  (Judicial Officer: Lippis, Deborah J.) |  |
| 12/18/2001 | SUMMONS ISSUED (Judicial Officer: Lippis, Deborah J. )<br>   *ARRGN-SUMMONS* |  |
| 01/15/2002 | **Arraignment** (8:00 AM)  (Judicial Officer: Lippis, Deborah J.) |  |
| 01/15/2002 | BENCH WARRANT ISSUED (Judicial Officer: Lippis, Deborah J. )<br>   *FELONY ARRGN* |  |
| 04/16/2008 | Historical Case File |  |
| 09/21/2017 | Administrative Reassignment to Department 1<br>   *Judicial Officer reassigned from Judge Deborah J. Lippis to JC Department 1. Judicial Officer*<br>   *TBD. Judge Deborah J. Lippis retired effective 9-20-2017.* |  |
| 02/09/2018 | Administrative Reassignment to Department 1<br>   *Judicial Officer reassigned from Judge JC Department 1 to Judge Robert J. Walsh.* |  |
| 01/07/2019 | Administrative Reassignment to Department 9 |  |

*Printed on 06/29/2023 at 9:08 AM*

CRIMINAL

# CASE SUMMARY
## CASE NO. 01F10856X

| | |
|---|---|
| | *Case reassigned from Department 01 (Judge Robert J. Walsh)* |
| 01/06/2020 | Administrative Reassignment to Department 8 |
| | *Case reassigned from Department 09 (Judge Joseph M. Bonaventure)* |
| 01/01/2022 | Administrative Reassignment to Department 9 |
| | *Case Reassigned From Department 08 (Judge Ann Zimmerman)* |
| 01/01/2023 | Administrative Reassignment to Department 8 |
| | *Case reassigned from Department 9 (Judge Joseph M. Bonaventure)* |
| 04/11/2023 | Certificate of Completion |
| | *CBI-LIFE Skills* |
| 04/25/2023 | **Arraignment** (8:00 AM)  (Judicial Officer: Jansen, William D. ;Location: RJC Courtroom 8D) |
| | *NO BAIL POSTED* |
| 04/25/2023 | Motion to Dismiss |
| | *granted* |
| 04/25/2023 | Case Closed - Dismissed |
| 04/25/2023 | Judgment Entered |
| 04/25/2023 | Warrant Ordered Quashed |
| 04/25/2023 | Minute Order - Department 08 |
| 04/26/2023 | Notice of Disposition and Judgment |

FINANCIAL INFORMATION

No Financial Information Exists

Exhibit 4-A

3RD DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

STATE OF UTAH vs. ANDREW VALLES

CASE NUMBER 031905567 State Felony

CHARGES

Charge 1 - 76-9-702.5 - LEWDNESS INVOLVING A CHILD - 2nd Degree Felony (amended to) - Class A Misdemeanor
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Guilty

Charge 2 - 76-9-702.5 - LEWDNESS INVOLVING A CHILD - Class A Misdemeanor
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Guilty

Charge 3 - 76-5-404.1 - SEX ABUSE CHILD - 2nd Degree Felony
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Dismissed (w/o prej)

Charge 4 - 76-5-404.1 - SEX ABUSE CHILD - 2nd Degree Felony
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Dismissed (w/o prej)

Charge 5 - 76-10-1206 - ATTEMPTED - DEAL IN HARMFUL MATERIAL TO A MINOR - 3rd Degree Felony (amended to) - Class A Misdemeanor
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Guilty

Charge 6 - 76-10-1206 - ATTEMPTED - DEAL IN HARMFUL MATERIAL TO A MINOR - 3rd Degree Felony (amended to) - Class A Misdemeanor
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Guilty

Charge 7 - 76-10-2301 - CONTRIBUTING TO THE DELINQUENCY OF MINOR - Class B Misdemeanor
Offense Date: July 01, 2002
Location: ███████████
Plea: June 01, 2004 Not Guilty
Disposition: October 12, 2004 Dismissed (w/o prej)

CASE NUMBER: 031905567 State Felony

CURRENT ASSIGNED JUDGE
        AMBER M METTLER

PARTIES
        Plaintiff - STATE OF UTAH

        Defendant - ANDREW VALLES

DEFENDANT INFORMATION
        Defendant Name: ANDREW VALLES
        Offense Tracking Number: 16177180
        Date of Birth: ███████████
        Law Enforcement Agency: SL SHERIFF / UNIF PD
        LEA Case Number: 03-66165
        Prosecuting Agency: SALT LAKE COUNTY
        Agency Case Number: 03016927
        Violation Date: 07-01-2002
        Sheriff Number: 280094

ACCOUNT SUMMARY
                Total Revenue Amount Due:        42.50
                        Amount Paid:             42.50
                      Amount Credit:              0.00
                             Balance:             0.00
        REVENUE DETAIL - TYPE: VIDEO TAPE COPY
                  Original Amount Due:           15.00
                  Amended Amount Due:            15.00
                        Amount Paid:             15.00
                      Amount Credit:              0.00
                             Balance:             0.00

        REVENUE DETAIL - TYPE: VIDEO TAPE COPY
                  Original Amount Due:           15.00
                  Amended Amount Due:            15.00
                        Amount Paid:             15.00
                      Amount Credit:              0.00
                             Balance:             0.00

        REVENUE DETAIL - TYPE: CERTIFIED COPIES
                  Original Amount Due:            8.50
                  Amended Amount Due:             8.50
                        Amount Paid:              8.50
                      Amount Credit:              0.00
                             Balance:             0.00

        REVENUE DETAIL - TYPE: CERTIFICATION
                  Original Amount Due:            4.00
                  Amended Amount Due:             4.00
                        Amount Paid:              4.00
                      Amount Credit:              0.00
                             Balance:             0.00

ASE NUMBER: 031905567 State Felony

:ASE NOTE

PROCEEDINGS

)8-21-2003   Judge PAUL G MAUGHAN assigned.

)8-21-2003   Case filed by kimm

)8-21-2003   Filed: From an Information

)8-21-2003   Filed: case filed by Detective M Herbert-SCLSO- warrant active

)8-21-2003   WARRANT for Case 031905567 ID 5702701

Judge: JOSEPH C. FRATTO

To any Peace Officer:

You are commanded to arrest and deliver the defendant to the Salt Lake County Jail.

A juvenile may not be confined in an adult facility.

Based on the probable cause statement.

Bail is set at $100000.00.

Issued: August 21, 2003

Law Enforcement Agency: COUNTY SHERIFF

Defendant Details:

Citation No:

Date of Birth: ███████████

Driver License No:

Social Security No: xxx-xx-████

Home Phone:

Vehicle License:

Warrant Number: 981110221

RETURN ON WARRANT

I received this warrant on the date of _____ and served the same by arresting the defendant and delivering the defendant to _____ County Jail on the date of _____.

_____

Officer

_____

Agency

)8-21-2003   Warrant Ordered on: August 21, 2003 Warrant Num: 981110221 Bail Allowed

Bail amount: 100,000.00

)8-21-2003   Warrant Issued on: August 21, 2003 Warrant Num: 981110221 Bail Allowed

Bail amount: 100,000.00

Judge JOSEPH C FRATTO

Issue Reason: Based on the probable cause statement

)4-23-2004   Warrant Recalled on : April 23, 2004 Warrant Num: 981110221 Bail Allowed

Recall Reason: Defendant was booked

ASE NUMBER: 031905567 State Felony

04-23-2004   INITIAL APPEARANCE scheduled on April 26, 2004 at 09:00 AM with
             Judge ARRAIGNMENT ARR

04-26-2004   Filed: Affidavit of Indigency - Approved by Judge Medley.

04-26-2004   ROLL CALL scheduled on May 04, 2004 at 02:00 PM with Judge
             ROBERT K. HILDER

04-26-2004   Minute Entry - Minutes for Appointment of Counsel
                 Judge: TYRONE E MEDLEY
             PRESENT
                 Clerk: tinaa
                 Prosecutor: LEMCKE, HOWARD R
                 Defendant Present
                 Video
                 Tape Number: 9.45 Tape Count: disk 45
             INITIAL APPEARANCE
                 Advised of charges and penalties.
             APPOINTMENT OF COUNSEL
                 Court finds the defendant indigent and appoints Legal
                 Defender Office to represent the defendant.
                 Appointed Counsel:
                 Name: Legal Defender Office
                 City:
                 Phone:
                 Affidavit of indigency is to be submitted by the defendant
             ROLL CALL is scheduled.
                 Date: 05/04/2004
                 Time: 02:00 p.m.
                 Location: To Be Determined
                 Third District Court
                 450 South State
                 Salt Lake City, UT 84111
                 Before Judge: ROBERT K HILDER

04-26-2004   Note: Bail remain $100,000.

05-04-2004   REMAND HEARING scheduled on May 11, 2004 at 02:00 PM with Judge
             JOSEPH C FRATTO

05-04-2004   Minute Entry - Minutes for Roll Call
                 Judge: ROBERT K HILDER
             PRESENT
                 Clerk: terryb
                 Prosecutor: SHEFFIELD, KELLY R
                 Defendant Present
                 Defendant's Attorney(s): CLARK, KIMBERLY
                 Video
                 Tape Count: 3.33
             HEARING
                 Roll call continued to 5/11.  ATD needs additional
                 information.
             ROLL CALL.
                 Date: 5/11/2004
                 Time: 02:00 p.m.
                 Location: To Be Determined
                 Third District Court
                 450 South State
                 Salt Lake City, UT 84111

ASE NUMBER: 031905567 State Felony

| | |
|---|---|
| | Before Judge: JOSEPH C. FRATTO |
| )5-04-2004 | ROLL CALL scheduled on May 11, 2004 at 02:00 PM with Judge JOSEPH C FRATTO |
| )5-04-2004 | REMAND HEARING Cancelled |
| | Reason: |
| )5-11-2004 | Minute Entry - Minutes for Roll Call |

  Judge: PAUL G. MAUGHAN

 PRESENT

  Clerk: terryb

  Prosecutor: POSTMA, MICHAEL E

  Defendant Present

  Defendant's Attorney(s): CLARK, KIMBERLY

  Video

  Tape Count: OFF RECORD

 HEARING

  COUNT: OFF RECORD

  Court Orders Case set for Preliminary Hearing

 PRELIMINARY HEARING is scheduled.

  Date: 05/27/2004

  Time: 09:00 a.m.

  Location: Fourth Floor - N42

  Before Judge: FRATTO, JOSEPH C.

| )5-11-2004 | scheduled on May 27, 2004 at 09:00 AM in FOURTH FLOOR-N42 with Judge JOSEPH C FRATTO |
| )5-27-2004 | scheduled on June 01, 2004 at 09:00 AM in THIRD FLOOR - W39 with Judge WILLIAM W BARRETT |
| )5-27-2004 | Minute Entry - Minutes for INCOURT NOTE |

  Judge: JOSEPH C. FRATTO

 PRESENT

  Clerk: wendyd

  Prosecutor: KENDALL, WILLIAM K

  Defendant Present

  Defendant's Attorney(s): CLARK, KIMBERLY

  Video

  Tape Number: 5/27/04 Tape Count: 10:07

  The defendant appearing in the custody of the Salt Lake County Sheriff. Defense request for continuance due to just recieving the video tape discovery, is granted. The request to reduce to bail to $50,000 is denied.

 PRELIMINARY HEARING is scheduled.

  Date: 06/01/2004

  Time: 09:00 a.m.

  Location: Third Floor - W39

  Before Judge: BARRETT, WILLIAM W.

| )5-29-2004 | Filed: First Supplemental Response to Request for discovery |
| )6-01-2004 | Minute Entry - Minutes for Preliminary Hearing |

  Judge: WILLIAM W. BARRETT

 PRESENT

  Clerk: nancyw

  Prosecutor: NIELSEN, MATTHEW G

  Defendant Present

  Defendant's Attorney(s): CLARK, KIMBERLY

  Video

  Tape Count: 10:18

ASE NUMBER: 031905567 State Felony

ARRAIGNMENT
Advised of rights and penalties.
Defendant is arraigned.
HEARING
COUNT: 10:18
witnesses sworn and exclusionary rule invoked
STATES WITNESS
COUNT: 10:20
███████████████  examined
COUNT: 10:30
███████████████  cross examined
COUNT: 10:48
Ronald Bayes examined
COUNT: 11:02
Ronald Bayes cross examined
COUNT: 11:24
Ronald Bayes re-direct
State rests
DEFENSE WITNESS
COUNT: 11:26
Ronald Bayes sworn and examined
COUNT: 11:44
Defense rests
State motion to amend charges
defense rejects to amendment of charges
motion to amend is denied
COUNT: 11:46
defense requests one charge of sex abuse of a child be
dismissed based on testimony
COUNT: 10:46
states response regarding one charge being dismissed
court orders counts to remain as charged at this time
Deft advised of rights, court finds cause to bind case over
for trial
SCHEDULING CONFERENCE is scheduled.
Date: 6/14/04
Time: 08:30 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G. MAUGHAN
CASE BOUNDOVER
This case is bound over.  An Arraignment hearing has been
set on 6/14/04 at 8:30 AM in courtroom W37 before Judge
PAUL G. MAUGHAN.

)6-01-2004   Note: Case Bound Over
)6-01-2004   SCHEDULING CONFERENCE scheduled on June 14, 2004 at 08:30 AM in
             THIRD FLOOR - W37 with Judge PAUL G MAUGHAN
)6-01-2004   Note: SCHEDULING CONFERENCE calendar modified.
)6-14-2004   SCHEDULING CONFERENCE scheduled on June 21, 2004 at 08:30 AM in
             THIRD FLOOR - W37 with Judge PAUL G MAUGHAN
)6-14-2004   Minute Entry - ARRAIGNMENT continued
             Judge: PAUL G. MAUGHAN

ASE NUMBER:  031905567 State Felony

```
                    PRESENT
                        Clerk: cheril
                        Prosecutor: COLLINS, CHOU CHOU
                        Defendant Present
                        Video
                        Tape Number: Video Tape Count: 11:13
                    CONTINUANCE
                        Whose Motion:
                        The Court.
                    Reason for continuance:
                        Defense counsel not present.
                        The motion is granted.
                    SCHEDULING CONFERENCE is scheduled.
                        Date: 06/21/2004
                        Time: 08:30 a.m.
                        Location: Third Floor - W37
                        THIRD DISTRICT COURT
                        450 SOUTH STATE STREET
                        SLC, UT 84114-1860
                        Before Judge: PAUL G. MAUGHAN
```

06-14-2004   SCHEDULING CONFERENCE scheduled on June 14, 2004 at 08:30 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

06-21-2004   JURY TRIAL scheduled on August 10, 2004 at 09:00 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

06-21-2004   JURY TRIAL scheduled on August 11, 2004 at 09:00 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

06-21-2004   FINAL PRETRIAL scheduled on July 26, 2004 at 08:30 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

06-21-2004   Minute Entry - Minutes for INCOURT NOTE

```
                        Judge: PAUL G. MAUGHAN
                    PRESENT
                        Clerk: cheril
                        Prosecutor: KENDALL, WILLIAM K
                        Defendant Present
                        Defendant's Attorney(s): CLARK, KIMBERLY
                        Video
                        Tape Number: Video Tape Count: 9:43
                        No Resolution - Jury Trial Requested.
                    FINAL PRETRIAL is scheduled.
                        Date: 07/26/2004
                        Time: 08:30 a.m.
                        Location: Third Floor - W37
                        THIRD DISTRICT COURT
                        450 SOUTH STATE STREET
                        SLC, UT 84114-1860
                        Before Judge: PAUL G. MAUGHAN
```

07-14-2004   Filed: Notice of Expert Witness

07-26-2004   SCHEDULING CONFERENCE scheduled on August 09, 2004 at 08:30 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

07-26-2004   Minute Entry - Minutes for INCOURT NOTE

```
                        Judge: PAUL G MAUGHAN
                    PRESENT
                        Clerk: cheril
```

ASE NUMBER: 031905567 State Felony

> Prosecutor: COLLINS, CHOU CHOU
>
> Defendant Present
>
> Defendant's Attorney(s): CLARK, KIMBERLY
>
> Video
>
> Tape Number: Video Tape Count: 11:07
>
> Defense present advising the court that the state filed a
> motion for expert witness that was not filed within the
> time frame as required.  Based on it not being filed
> timely, defense will be filing an objection to the motion.
> Court sets this matter over
> until 8-9-04.  Defense is advised to have her motion filed
> by that date and Motion Hrg will be scheduled.

SCHEDULING CONFERENCE is scheduled.

> Date: 08/09/2004
>
> Time: 08:30 a.m.
>
> Location: Third Floor - W37
>
> THIRD DISTRICT COURT
>
> 450 SOUTH STATE STREET
>
> SLC, UT 84114-1860
>
> Before Judge: PAUL G MAUGHAN

07-27-2004   JURY TRIAL Cancelled

> Reason: ATD requested continuance.

07-30-2004   Filed: Motion to continue trial and objection to testimony of
expert witness

08-09-2004   MOTION HEARING scheduled on August 19, 2004 at 09:30 AM in
THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

08-09-2004   Minute Entry - Minutes for INCOURT NOTE

> Judge: PAUL G MAUGHAN
>
> PRESENT
>
> > Clerk: cheril
> >
> > Prosecutor: HALL, H. CRAIG
> >
> > Defendant Present
> >
> > Defendant's Attorney(s): MISNER FOR K. CLARK
> >
> > Video
> >
> > Tape Number: Video Tape Count: 12:27
> >
> > Attorney Michael Misner appeared for Attorney Kim Clark,
> > motioning the court set this matter for a Motion Hearing to
> > address expert testimony.  Motion is granted and hearing is
> > scheduled.

MOTION HEARING is scheduled.

> Date: 08/19/2004
>
> Time: 09:30 a.m.
>
> Location: Third Floor - W37
>
> THIRD DISTRICT COURT
>
> 450 SOUTH STATE STREET
>
> SLC, UT 84114-1860
>
> Before Judge: PAUL G MAUGHAN

08-10-2004   Filed: State's Response to Supplemental Discovery Request

08-19-2004   Minute Entry - Minutes for MOTION HEARING

> Judge: PAUL G MAUGHAN
>
> PRESENT
>
> > Clerk: nicolel
> >
> > Prosecutor: KENDALL, WILLIAM K
> >
> > Defendant Present
> >
> > Defendant's Attorney(s): CLARK, KIMBERLY

ASE NUMBER: 031905567 State Felony

Video
Tape Number: Video
HEARING
TAPE: Video COUNT: 10:00
Defense addresses court regarding objection and asks court
to not allow testimony of expert witness
COUNT: 10:03
State responds
COUNT: 10:06
Defense proffers more information regarding case
COUNT: 10:10
State responds
COUNT: 10:12
Defense argues
COUNT: 10:14
State responds
COUNT: 10:15
Defense argues
COUNT: 10:16
State responds
COUNT: 10:18
Court orders defense motion is denied and testimony of
expert witness will be allowed
JURY TRIAL is scheduled.
Date: 10/12/2004
Time: 09:00 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN
JURY TRIAL.
Date: 10/13/2004
Time: 09:00 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN
FINAL PRETRIAL CONFERENCE.
Date: 10/04/2004
Time: 08:30 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN
08-19-2004  JURY TRIAL scheduled on October 12, 2004 at 09:00 AM in THIRD
FLOOR - W37 with Judge PAUL G MAUGHAN
08-19-2004  JURY TRIAL scheduled on October 13, 2004 at 09:00 AM in THIRD
FLOOR - W37 with Judge PAUL G MAUGHAN
08-19-2004  FINAL PRETRIAL CONFERENCE scheduled on October 04, 2004 at
08:30 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

ASE NUMBER: 031905567 State Felony

.0-04-2004   Minute Entry - Minutes for INCOURT NOTE
                  Judge: PAUL G MAUGHAN
              PRESENT
                 Clerk: cheril
                 Prosecutor: KENDALL, WILLIAM K
                 Defendant Present
                 Defendant's Attorney(s): CLARK, KIMBERLY
                 Video
                 Tape Number: Video Tape Count: 12:21
                 Defense counsel present, advising the court that they have
                 made a counter offer to the state and the state needs time
                 to review offer with witnesses/victims.  Counsel advises
                 the court that if resolution is not reached, they will be
                 ready to proceed with
                 trial as scheduled.

.0-07-2004   JURY TRIAL Cancelled
             Reason: Case has been settled.

.0-12-2004   Charge 3 amended
.0-12-2004   Charge 4 amended
.0-12-2004   Charge 5 amended
.0-12-2004   Charge 6 amended
.0-12-2004   Charge 1  Disposition is Dismissed
.0-12-2004   Charge 2  Disposition is Dismissed
.0-12-2004   Charge 3  Disposition is Guilty
.0-12-2004   Charge 4  Disposition is Guilty
.0-12-2004   Charge 5  Disposition is Guilty
.0-12-2004   Charge 6  Disposition is Guilty
.0-12-2004   Charge 7  Disposition is Dismissed
.0-12-2004   Minute Entry - Minutes for INCOURT NOTE
                  Judge: PAUL G MAUGHAN
              PRESENT
                 Clerk: cheril
                 Prosecutor: KENDALL, WILLIAM K
                 Defendant Present
                 Defendant's Attorney(s): CLARK, KIMBERLY
                 Video
                 Tape Number: Video
                 The Information is read.
                 Court advises defendant of rights and penalties.
                 Defendant waives time for sentence.
                 A pre-sentence investigation was ordered.
                 The Judge orders Adult Probation & Parole to prepare a Pre-
                 sentence report.
              Change of Plea Note
                 As part of the plea agreement, the deft will enter a guilty
                 plea to amended counts 1 & 2 - Lewdness Involving a Child
                 both Class A Misd and to Amended counts 5&6 - Attempted
                 Deal In Harmful Material to a Minor Both Class A Misd.  All
                 remaining counts dism
                 On states motion, court orders a Psychosexual Evaluation be
                 completed.
              SENTENCING is scheduled.
                 Date: 11/29/2004
                 Time: 08:30 a.m.
                 Location: Third Floor - W37

ASE NUMBER: 031905567 State Felony

```
                    THIRD DISTRICT COURT
                    450 SOUTH STATE STREET
                    SLC, UT 84114-1860
                    Before Judge: PAUL G MAUGHAN
```

.0-12-2004  Charge 1  Disposition is Guilty
.0-12-2004  Charge 1 amended
.0-12-2004  Charge 5 amended
.0-12-2004  Charge 6 amended
.0-12-2004  Charge 2  Disposition is Guilty
.0-12-2004  Charge 3  Disposition is Dismissed
.0-12-2004  Charge 4  Disposition is Dismissed
.0-12-2004  SENTENCING scheduled on November 29, 2004 at 08:30 AM in THIRD
            FLOOR - W37 with Judge PAUL G MAUGHAN
.0-12-2004  Filed: Statement of Defendant in Support of Guilty Plea and
            Certificate of Counsel.
.0-12-2004  Note: INCOURT NOTE minutes modified.
.1-29-2004  Minute Entry - SENTENCING continued
                    Judge: PAUL G MAUGHAN
                    PRESENT
                        Clerk: cheril
                        Prosecutor: MARTINEZ, ANDREA T
                        Defendant Present
                        Defendant's Attorney(s): CLARK, KIMBERLY
                        Agency: Adult Probation & Parole
                        Video
                        Tape Number: Video Tape Count: 10:28
                    CONTINUANCE
                        Whose Motion:
                        The Defendant's counsel Kim Clark.
                    Reason for continuance:
                        Pre-sentence report not available
                        The motion is granted.
                    SENTENCING is scheduled.
                        Date: 12/13/2004
                        Time: 08:30 a.m.
                        Location: Third Floor - W37
                        THIRD DISTRICT COURT
                        450 SOUTH STATE STREET
                        SLC, UT 84114-1860
                        Before Judge: PAUL G MAUGHAN
.1-29-2004  SENTENCING scheduled on December 13, 2004 at 08:30 AM in THIRD
            FLOOR - W37 with Judge PAUL G MAUGHAN
.1-29-2004  SENTENCING scheduled on November 29, 2004 at 08:30 AM in THIRD
            FLOOR - W37 with Judge PAUL G MAUGHAN
.2-10-2004  Filed: Presentence Report/Evaluation
.2-13-2004  STATUS CONFERENCE scheduled on December 27, 2004 at 08:30 AM in
            THIRD FLOOR - W37 with Judge PAUL G MAUGHAN
.2-13-2004  Minute Entry - Minutes for INCOURT NOTE
                    Judge: PAUL G MAUGHAN
                    PRESENT
                        Clerk: cheril
                        Prosecutor: KENDALL, WILLIAM K
                        Defendant Present
```

ASE NUMBER: 031905567 State Felony

Defendant's Attorney(s): CLARK, KIMBERLY
Agency: Adult Probation & Parole
Video
Tape Number: Video Tape Count: 11:30
Defense counsel present advising the court that they will
be filing a motion to withdraw the defendant's GP and
request the court set this matter over until 12-27-04 for a
Status Conference.  State has no objection. Status
Conference is scheduled.
STATUS CONFERENCE is scheduled.
Date: 12/27/2004
Time: 08:30 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN

.2-27-2004   BRIEFING/SCHEDULING CONF. scheduled on January 10, 2005 at
08:30 AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

.2-27-2004   Minute Entry - Minutes for INCOURT NOTE
Judge: PAUL G MAUGHAN
PRESENT
Clerk: cheril
Prosecutor: KENDALL, WILLIAM K
Defendant Present
Defendant's Attorney(s): CLARK, KIMBERLY
Video
Tape Number: Video Tape Count: 10:29
Defense counsel present advising the court the they will be
filing a motion to withdraw guilty plea, and request the
court set this matter over for a Briefing/Scheduling
Conference.  Court continues this matter, but advises
defense counsel that she must
have her motion filed by 1-10-05 in order to have motion
hearing scheduled.
BRIEFING/SCHEDULING CONF. is scheduled.
Date: 01/10/2005
Time: 08:30 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN

.2-27-2004   Fee Account created Total Due: 15.00
.2-27-2004   Fee Account created
.2-27-2004   VIDEO TAPE COPY  15.00
)1-10-2005   BRIEFING/SCHEDULING CONF scheduled on January 27, 2005 at 09:00
AM in THIRD FLOOR - W37 with Judge PAUL G MAUGHAN

)1-10-2005   Minute Entry - Minutes for INCOURT NOTE
Judge: PAUL G MAUGHAN
PRESENT
Clerk: cheril
Prosecutor: KENDALL, WILLIAM K
Defendant Present
Defendant's Attorney(s): CLARK, KIMBERLY A

ASE NUMBER: 031905567 State Felony

Video
Tape Number: Video Tape Count: 9:54
State present requesting time to reply to defense motion to
withdraw GP.  Court grants continuance and advises the
state that they are to have there response filed with the
court by 1-24-05 and Briefing/Scheduling Conference is
scheduled for 1-27-05.

BRIEFING/SCHEDULING CONF is scheduled.
Date: 01/27/2005
Time: 09:00 a.m.
Location: Third Floor - W37
THIRD DISTRICT COURT
450 SOUTH STATE STREET
SLC, UT 84114-1860
Before Judge: PAUL G MAUGHAN

)1-18-2005  Fee Account created Total Due: 15.00
)1-18-2005  Fee Account created
)1-18-2005  VIDEO TAPE COPY  15.00
)1-25-2005  Filed: State's Memorandum in Opposition to Defendant's Motion
to Withdraw Guilty Pleas

)1-27-2005  Minute Entry - Minutes for MOTION HEARING
Judge: PAUL G MAUGHAN
PRESENT
Clerk: cheril
Prosecutor: KENDALL, WILLIAM K
Defendant Present
Defendant's Attorney(s): CLARK, KIMBERLY A
Video
Tape Number: Video Tape Count: 9:13   57
HEARING
TAPE: Video COUNT: 9:13   57
Defense present addressing their Motion to allow the
defendant to Withdraw his Guilty Plea and motioning the
court to set aside the deft's plea.
Judge Maughan addresses defense counsel and addresses the
transcript from the day the deft entered his change of
plea.
Defense response
Judge Maughan addresses defense counsel regarding the
rights the deft was given at the time of sentencing.
Defense response
COUNT: 9:38
States argues defense motion
COUNT: 9:41
Defendant addresses the court
COUNT: 9:45
Judge Maughan addresses the wording in the plea form that
was signed by the deft at the time he entered his change of
plea.
Judge Maughan advises the defendant and defense counsel
that he has reviewed all evidence provided to the court
regarding their motion.
Court denies defense Motion and enters into record the
reasons for his ruling.
Based on motion being denied, court will enter Sentencing
today.

Defense counsel and the defendant reviewed the
Psychological Evaluation before Sentencing was imposed.

SENTENCE JAIL

Based on the defendant's conviction of LEWDNESS INVOLVING A
CHILD a Class A Misdemeanor, the defendant is sentenced to
a term of 365 day(s)

Based on the defendant's conviction of LEWDNESS INVOLVING A
CHILD a Class A Misdemeanor, the defendant is sentenced to
a term of 365 day(s)

Based on the defendant's conviction of ATTEMPTED DEAL IN
HARMFUL MATERIAL TO A MINOR a Class A Misdemeanor, the
defendant is sentenced to a term of 365 day(s)

Based on the defendant's conviction of ATTEMPTED DEAL IN
HARMFUL MATERIAL TO A MINOR a Class A Misdemeanor, the
defendant is sentenced to a term of 365 day(s) The total
time suspended for this charge is 365 day(s).

SENTENCE JAIL RELEASE TIME NOTE

NO SHED.

SENTENCE JAIL SERVICE NOTE

Defendant to receive 300 days CTS towards Count 1.

SENTENCE JAIL CONCURRENT/CONSECUTIVE NOTE

All counts to run consecutive to one another.

SENTENCE FINE

Charge # 1 Fine: $2500.00

Suspended: $0.00

Surcharge: $1148.65

Due: $2500.00

Charge # 2 Fine: $2500.00

Suspended: $0.00

Surcharge: $1148.65

Due: $2500.00

Charge # 3

Charge # 4

Total Fine: $5000.00

Total Suspended: $0

Total Surcharge: $2297.30

Total Principal Due: $5000.00

Plus Interest

COMMUNITY SERVICE

Complete 100 hour(s) of community service.

SENTENCE COMMUNITY SERVICE NOTE

Community Service will be monitored by AP&P.

ORDER OF PROBATION

The defendant is placed on probation for 36 month(s).

Probation is to be supervised by Adult Probation & Parole.

Defendant to serve 1095 day(s) jail.

Defendant is to pay a fine of 5000.00 which includes the
surcharge.  Interest may increase the final amount due.

PROBATION CONDITIONS

Usual and ordinary conditions required by the Department of
Adult Probation & Parole.

Submit to searches of person and property upon the request
of any Law Enforcement Officer.

Violate no laws.

ASE NUMBER: 031905567 State Felony

Enter, participate in, and complete any program, counseling, or treatment as directed by the Department of Adult Probation and Parole.

Defendant is to have NO Contact with the victim or victims family.

Defendant is not to be within 1500 ft of victims residence. The deft is also advised that he is not to call, email, write or have a 3rd party contact the victims.

Defendant is to complete Sex Offender Treatment.

Defendant is to comply with all Group A Sex Offender Conditions.

Defendant is advised that he will be responsible for the victims and victims families counseling and for Extradition Costs.  State to provide restitution amount to the court.

Defendant to pay fine of $5000.  Payments will be paid through AP&P.

Defendant to complete 100 hours Community Service.

SENTENCE PROBATION SERVICE NOTE

Defendant is to be on Intensive Supervised Probation,

Defendant is advised that after he has served 2 years of his sentence and if he is amenable to and approved for sex offender treatment, the court will consider a review.

| | |
|---|---|
| )1-27-2005 | Note: MOTION HEARING minutes modified. |
| )1-27-2005 | Note: MOTION HEARING minutes modified. |
| )2-01-2005 | Note: MOTION HEARING minutes modified. |
| )2-02-2005 | Filed: Letter from DA's office advising the court that the State did not incur any additional costs and therefore does not seek additional restitution. |
| )2-22-2005 | Filed: Notice of Appeal |
| )2-22-2005 | Filed: Designation of Record |
| )2-22-2005 | Filed: Certificate |
| )2-22-2005 | Filed: Request for Transcript |
| )2-23-2005 | Note: Forwarded Cert/Copies of Notice of Appeal, Designation of Record, Certificate, Request for Transcript to Court of Appeals |
| )2-24-2005 | Filed: Court of Appeals letter to Kimberly Clark (COA # 20050174)- Notice of Appeal filed with Court of Appeals |
| )3-08-2005 | Filed: Transcript of Motion to Withdraw Plea and Sentencing hearing dated 1-27-05, Carolyn Erickson, CCT |
| )3-08-2005 | Filed: Notice of Filing Transcript of Motion to Withdraw Plea and Sentencing hearing dated 1-27-05, Carolyn Erickson, CCT |
| )4-07-2005 | Filed: Findings of Fact and Conclusions of Law |
| )4-07-2005 | Filed order: Findings of Fact and Conclusions of Law<br>Judge PAUL G MAUGHAN<br>Signed April 07, 2005 |
| )4-08-2005 | Filed order: Order<br>Judge PAUL G MAUGHAN<br>Signed April 08, 2005 |
| )4-12-2005 | Filed: Amended Notice of Appeal |
| )4-12-2005 | Note: Forwarded Cert/Copy of Amended Notice of Appeal to Utah Court of Appeals |
| )4-18-2005 | Note: Clerk sent AP&P Presentence Report to Jody in the Criminal Dept/Appeals. |
| )4-18-2005 | Note: Cert/Copy of Index forwarded to Court of Appeals - 20050174-CA |
| )4-18-2005 | Note: Paginated Record Forwarded to Court of Appeals - File-1, Tran-1 - 20050174-CA |
| )8-17-2005 | Filed: Letter from Court of Appeals - Order of Dismissal - 20050174-ca - Appeal dismissed |

ASE NUMBER: 031905567 State Felony

| | |
|---|---|
| )9-16-2005 | Filed: Remittitur Received - 20050174-ca - Appeal Dismissed - Record Received - File-1, Trans-1 |
| )6-26-2006 | Filed: Petition for Post-Conviction Remedy |
| )7-11-2006 | Filed order: Order - The court finds that Defendant's Petition for Post Conviction Remedy does not comport with Rule 65C and so it is returned to Defendant and Defendant is given leave to amend the Petition within 20 day, pursuant to Rule 65C (g) (3) |

      Judge PAUL G MAUGHAN

      Signed July 11, 2006

| | |
|---|---|
| )7-12-2006 | Fee Account created Total Due: 8.50 |
| )7-12-2006 | Fee Account created |
| )7-12-2006 | Fee Account created Total Due: 4.00 |
| )7-12-2006 | Fee Account created |
| )7-12-2006 | CERTIFIED COPIES 8.50 |

      Note: 15.00 cash tendered.      2.50 change given.

| | |
|---|---|
| )7-12-2006 | CERTIFICATION 4.00 |

      Note: 15.00 cash tendered.      2.50 change given.

| | |
|---|---|
| )7-21-2006 | Filed: Copy of Order mailed to deft returned by the Post Office |
| .1-08-2006 | Filed: AP&P P/V Report - Deft violated probation by moving near a school and not reporting the move to his probation officer. Also, he has not been paying on his financial obligations and is not amenable to treatment. $15,000 b/w requested. |
| .1-08-2006 | Filed order: After reviewing P/V report, the court orders a $15,000 b/w be issued. |

      Judge PAUL G MAUGHAN

      Signed November 08, 2006

| | |
|---|---|
| .1-08-2006 | Warrant Ordered on: November 08, 2006 Warrant Num: 981181022 Bail Allowed |

      Bail amount: 15,000.00

| | |
|---|---|
| .1-08-2006 | WARRANT for Case 031905567 ID 6789658 |

      Judge: PAUL G MAUGHAN

To any Peace Officer in the State of Utah:

      You are commanded to arrest and deliver the defendant to the Salt Lake County Jail.

      A juvenile may not be confined in an adult facility.

      The defendant must appear in Court before Judge PAUL G MAUGHAN on the next available court date.

      Failure to Comply with Probation

      Bail is set at $15,000.00.

      Issued: November 8, 2006

      Law Enforcement Agency: COUNTY SHERIFF

Defendant Details:

      Citation No:

Date of Birth: ██████████

Driver License No:

Social Security No: xxx-xx-███

Home Phone:

Vehicle License:

Warrant Number: 981181022

RETURN ON WARRANT

      I received this warrant on the date of _____ and served the same by arresting the defendant and delivering the defendant to _____ County Jail on the date of _____.

ASE NUMBER: 031905567 State Felony

Officer

Agency

1-08-2006  Warrant Issued on: November 08, 2006 Warrant Num: 981181022
Bail Allowed
Bail amount: 15,000.00
Judge PAUL G MAUGHAN
Issue Reason: Failed to comply with terms of probation

)1-29-2007  Filed: AP&P P/V Report - After b/w was issued 11/8/06, the deft
failed to report in November.  He called on 12/1/06 and stated
that he knew of the warrant.  He said he would not report until
his hearing.  Recommend increasing b/w to $25,000.

)1-31-2007  Filed order: After reviewing P/V report, the c/o $25,000 b/w be
issued.
Judge PAUL G MAUGHAN
Signed January 30, 2007

)1-31-2007  WARRANT for Case 031905567 ID 11004206
Judge: PAUL G MAUGHAN
To any Peace Officer in the State of Utah:
You are commanded to arrest and deliver the defendant to
the Salt Lake County Jail.
A juvenile may not be confined in an adult facility.
The defendant must appear in Court before Judge PAUL G
MAUGHAN on the next available court date.
Failure to Comply with Probation
Bail is set at $25,000.00.
Issued: January 31, 2007
Law Enforcement Agency: COUNTY SHERIFF
Defendant Details:
Citation No:
Date of Birth: ████████
Driver License No:
Social Security No: xxx-xx-████
Home Phone:
Vehicle License:
Warrant Number: 981186273
RETURN ON WARRANT
I received this warrant on the date of _____ and
served the same by arresting the defendant and delivering
the defendant to _____ County Jail on the date of
_____.

Officer

ASE NUMBER: 031905567 State Felony

Agency

)1-31-2007   Warrant Recalled on : January 31, 2007 Warrant Num: 981181022
             Bail Allowed
             Recall Reason: Court ordered recall

)1-31-2007   Warrant Ordered on: January 31, 2007 Warrant Num: 981186273
             Bail Allowed
             Bail amount: 25,000.00

)1-31-2007   Warrant Issued on: January 31, 2007 Warrant Num: 981186273 Bail
             Allowed
             Bail amount: 25,000.00
             Judge PAUL G MAUGHAN
             Issue Reason: Failed to comply with terms of probation

)4-17-2008   **** PROTECTED **** Filed: AP&P P/V report - Deft is considered
             a fugitive and his whereabouts are still unknown.  Recommend
             terminating AP&P's interests and have the b/w remain
             outstanding.

)4-24-2008   Filed order: After reviewing P/V Report, the c/o bench warrant
             to remain and deft placed on court probation.
                    Judge PAUL G MAUGHAN
                    Signed April 21, 2008

)1-03-2010   Judge ROBERT FAUST assigned.

)1-31-2010   Warrant Recalled on : January 31, 2010 Warrant Num: 981186273
             Bail Allowed
             Recall Reason: Warrant recalled because of expiration date.

)3-20-2012   Judge ELIZABETH A HRUBY-MILLS assigned.

)6-04-2012   Judge KATIE BERNARDS-GOODMAN assigned.

)1-12-2018   Judge AMBER M METTLER assigned.

)5-21-2018   WARRANT: VALLES, ANDREW Case 031905567
                    Judge: AMBER M METTLER
             To any Peace Officer in the State of Utah:
                    You are commanded to arrest and deliver the defendant to
                    the Salt Lake County Jail.
                    A juvenile may not be confined in an adult facility.
                    Defendant may be transported within the state.
                    The defendant must appear in Court before Judge AMBER M
                    METTLER on the next available court date.
                    Failed to comply with terms of probation
                    Bail is set at $25000.00.
                    This warrant may be served any time, day or night.
                    Issued: May 21, 2018
                    Law Enforcement Agency: SL SHERIFF / UNIF PD
             End Of Order - Signature at the Top of the First Page
             Defendant Details:
             ANDREW VALLES                        Citation No:
             Date of Birth: █████████
             Driver License No:
             Social Security No: xxx-xx-████
             Home Phone:
             Vehicle License:
             Warrant Number: 985571998

)5-21-2018   Warrant Ordered on: May 21, 2018 Warrant Num: 985571998 Bail
             Allowed
             Bail amount: 25,000.00

)5-21-2018   Filed order: WARRANT ISSUED For Case 031905567
                    Judge AMBER M METTLER

ASE NUMBER: 031905567 State Felony

                    Signed May 21, 2018
)5-21-2018   Warrant Issued on: May 21, 2018 Warrant Num: 985571998 Bail
             Allowed
             Bail amount: 25,000.00
             Judge AMBER M METTLER
             Issue Reason: Failed to comply with terms of probation
)5-21-2021   Warrant Recalled on : May 21, 2021 Warrant Num: 985571998 Bail
             Allowed
             Recall Reason: Warrant recalled because of expiration date.

Exhibit   5 - A



CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
U.S. COURTHOUSE - 500 PEARL STREET
NEW YORK, NY 10007

OFFICIAL BUSINESS



C-1-212U

CIM MA
JUL 17 2023
FAC-B



SPECIAL MAIL - OPEN ONLY
IN PRESENCE OF INMATE

LEGAL MAIL

CONFIDENTIAL





UNITED STATES POSTAGE
$001.35°
PITNEY BOWES
02 1P
0000889838   JUL 12 2023
MAILED FROM ZIP CODE 10601

Andrew  Valles InmateNo.BJ6191
B-BH-343
California Institution for Men
P.O. Box 441
Chino, CA 91708

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
                                                                   :
                                                                   :
            -v-                                                    :        19 Cr. 672 (JPC)
                                                                   :        20 Civ. 7835 (JPC)
                                                                   :
ANDREW VALLES,                                                     :        OPINION AND ORDER
                                                                   :
                          Defendant.                               :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On October 12, 2004, Valles pleaded guilty in Utah state court of two counts of lewdness
involving a child and two counts of attempted dealing in harmful material to a minor.  Dkt. 13[1]
("PSR") ¶¶ 7, 29.  Upon completion of his term of imprisonment for those convictions in July
2006, id. ¶ 8, Valles was required to register as a sex offender biannually for the subsequent ten
years with the Utah Sex and Kidnap Offender Registration Program, id. ¶ 10, and as of August 1,
2008, to register as a sex offender in any jurisdiction where he resides under the Sex Offender

Defendant Andrew Valles moves under 28 U.S.C. § 2255 to vacate his conviction for
traveling in interstate commerce and knowingly failing to register as a sex offender, in violation
of 18 U.S.C. § 2250, arguing that he received ineffective assistance from his counsel.  Because the
Court determines that Valles's counsel's performance did not fall below an objective standard of
reasonableness and that Valles has not identified any prejudice, the Court denies his motion.

## I.  Facts and Procedural History

On October 12, 2004, Valles pleaded guilty in Utah state court of two counts of lewdness
involving a child and two counts of attempted dealing in harmful material to a minor.  Dkt. 13[1]
("PSR") ¶¶ 7, 29.  Upon completion of his term of imprisonment for those convictions in July
2006, id. ¶ 8, Valles was required to register as a sex offender biannually for the subsequent ten
years with the Utah Sex and Kidnap Offender Registration Program, id. ¶ 10, and as of August 1,
2008, to register as a sex offender in any jurisdiction where he resides under the Sex Offender

---

[1] Unless otherwise indicated, all docket citations refer to the docket in the underlying
criminal matter, *United States v. Valles*, No. 19 Cr. 672 (JPC) (S.D.N.Y.).

Registration and Notification Act ("SORNA"), 34 U.S.C. § 20913(a); *see United States v. Lewis*, 768 F.3d 1086, 1095 (10th Cir. 2014); *see also United States v. Gundy*, 804 F.3d 140, 143 (2d Cir. 2015). While Valles initially registered in Utah on July 10, 2006, PSR ¶ 10, he thereafter failed to register or update his registration information despite traveling to various states including New York, *id.* ¶¶ 12-13. Valles resided in New York from July 2016 until May 3, 2018, Dkt. 11 ("9/13/19 Plea Hearing Tr.") at 15:18-20, when he was arrested on a warrant arising from a 194-count indictment in California that charged Valles for his alleged involvement in a mortgage fraud advance scheme and a "bankruptcy dumping" scheme, PSR ¶¶ 11, 39-40.

A sealed complaint against Valles was filed in this District on June 1, 2018, alleging one count of violating 18 U.S.C. § 2250 for traveling in interstate commerce and knowingly failing to register and update a registration as required under SORNA. Dkt. 1. A few months after the filing of that sealed federal complaint, Valles pleaded guilty to numerous crimes in the California case on August 27, 2018. PSR ¶ 37. He was then sentenced to thirteen years' imprisonment on May 15, 2019. *Id.* While in California state custody, Valles was arrested on the failure to register charge in this case, and he arrived in this District in late July 2019. *See* July 31, 2019 Minute Entry; PSR ¶ 14.

On September 13, 2019, Valles waived his right to be charged by indictment, Dkt. 10, and pleaded guilty before the Honorable William H. Pauley III to a criminal information that charged him with traveling in interstate commerce and knowingly failing to register under SORNA from at least July 2006 through May 2018 in violation of 18 U.S.C. § 2250. *See* 9/13/19 Plea Hearing Tr.; Sept. 13, 2019 Minute Entry. When asked by Judge Pauley at the plea hearing whether he was satisfied by his attorneys' representation, Valles responded: "Absolutely. Yes." 9/13/19 Plea

Hearing Tr. at 5:25-6:3.  Later during the proceeding, Valles explained his criminal conduct as follows:

> From July 2006 through July 2016[,] I was required to register as a sex offender.  I traveled across state lines to California and to New York -- and Manhattan, New York . . . during this time period and knowingly failed to register and update my registration. I knew that failing to register was against the law.  And . . . I apologize. I'm very sorry.

*Id.* at 14:21-15:2.  Valles then added that from July 2016 until his arrest on May 3, 2018, he was residing in Manhattan.  *Id.* at 15:18-20.  At the plea hearing, the Assistant United States Attorney also summarized the Government's proof were the case to proceed to trial, which she explained consisted of "lay and law enforcement witness testimony to establish the defendant's residency in multiple states, including in Manhattan, a videotaped postarrest statement of the defendant, and court documents and a criminal history record from the defendant's prior conviction."  *Id.* at 16:7-12.

On December 20, 2019, Judge Pauley sentenced Valles to nine months' imprisonment, to be served consecutive to his California term of imprisonment, as well as five years of supervised release.  Dkt. 16 at 2; Dkt. 17 ("12/20/19 Sentencing Tr.") at 17:5-9.  This sentence reflected a downward variance from the advisory range under the U.S. Sentencing Guidelines of 15 to 21 months' imprisonment, which range entailed a two-level reduction of Valles's offense level pursuant to U.S.S.G. § 3E1.1(a) for accepting responsibility.  *See* 12/20/19 Sentencing Tr. at 14:7-14.  Toward the end of the proceeding, Judge Pauley commended Valles's attorney for having "done an excellent job in representing [Valles] in this matter."  *Id.* at 23:5-6.

On September 23, 2020, Valles moved to vacate his conviction pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel.  Dkt. 19 ("Motion").  The Government opposed that motion on November 24, 2020.  Dkt. 21 ("Opposition").  After the Court granted Valles an

extension of time to respond to that opposition and denied his request for appointment of counsel, Dkt. 27, Valles filed a response in further support of his motion on April 27, 2021, Dkt. 28 ("Reply"). This case was reassigned to the undersigned on July 28, 2021. Dkt. 29. On June 1, 2023, the Court ordered additional briefing as to its jurisdiction in this case. Dkt. 37. The Government filed a letter brief in response to that Order on June 20, 2023. Dkt. 38. Valles filed a letter brief in response to that Order on June 22, 2023.[2] Dkt. 39.

## II. Legal Standard

Under 28 U.S.C. § 2255(a), a prisoner in custody for a federal sentence[3] may move for the sentence to be vacated, set aside, or corrected on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The prisoner may gain such relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that

---

[2] Valles's letter brief also requested a stay of this case pending the resolution of other proceedings that he is pursuing in other courts. Dkt. 39 at 3. For the reasons stated in the Court's previous Order denying a stay, Dkt. 34, that request is denied.

[3] Despite the fact that Valles currently remains in state custody, with his federal sentence to commence upon completion of his state term, the Court has jurisdiction to resolve this habeas petition. *See, e.g., Green v. United States*, 415 F. Supp. 3d 338, 341 (W.D.N.Y. 2019) ("Courts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence and thus are subject to the § 2255 statute of limitations." (brackets omitted) (quoting *Perry v. Warden Fort DIX FCI*, 609 F. App'x 725, 727 (3d Cir. 2015)); *United States v. Mercedes*, No. 90 Cr. 450 (RWS), 1997 WL 122785, at *2 (S.D.N.Y. Mar. 17, 1997) ("The fact that [a defendant] is in state custody, rather than federal custody, is irrelevant. A petitioner . . . whose federal sentence is to be served upon completion of a state sentence he is still serving and who has not as yet commenced his federal sentence, satisfies the custody requirements of Section 2255 governing motions to set aside or correct a federal sentence."); *see also U.S. ex rel. Meadows v. State of N.Y.*, 426 F.2d 1176, 1179 (2d Cir. 1970) (in addressing a habeas appeal involving a state conviction, explaining that "although [the petitioner] is not presently serving [the anticipated] sentence" that he seeks to challenge, "[t]he writ may be employed to contest the validity of future as well as present restraints").

constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"

*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424,

428 (1962)).  Additionally, the Court must "construe *pro se* pleadings liberally and interpret them

'to raise the strongest arguments they *suggest*.'" *Rahmankulov v. United States*, Nos. 23 Civ. 3206,

20 Cr. 653 (RA), 2023 WL 3303949, at *1 (S.D.N.Y. May 8, 2023) (quoting *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation

marks and citations omitted); *accord Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir.

2014).

### III.  Discussion

#### A.    Evidentiary Hearing

In resolving a motion under section 2255, the district court must hold a hearing "[u]nless

the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir.

2013).  Because "the filing of a motion pursuant to § 2255 does not automatically entitle the

movant to a hearing" as "that section does not imply that there must be a hearing where the

allegations are vague, conclusory, or palpably incredible," "[t]o warrant a hearing, the motion must

set forth specific facts supported by competent evidence, raising detailed and controverted issues

of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 130-31

(internal quotation marks omitted).  "In determining whether the assertions in a § 2255 motion

warrant discovery or a hearing, the court must also take into account admissions made by the

defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption

of verity.'" *Id.* at 131 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  "[I]t is within the

district court's discretion to determine the scope and nature of a hearing," as well as "to determine

whether to hold a hearing, or to elect to investigate facts outside the record without the personal presence of the movant." *Sessum v. United States*, Nos. 18 Civ. 6222 (KPF), 15 Cr. 667 (KPF), 2020 WL 1243783, at *6 (S.D.N.Y. Mar. 16, 2020).

In this case, the Court determines that "[t]he combined submissions of the parties provide a sufficient basis upon which to deny the [motion], and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its views on the facts alleged by [Valles]." *Pinhasov v. United States*, Nos. 16 Civ. 7349 (KBF), 14 Cr. 670 (KBF), 2018 WL 550611, at *2 (S.D.N.Y. Jan. 22, 2018) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)). Therefore, an evidentiary hearing is not necessary to resolve Valles's motion.

## B.    Ineffective Assistance of Counsel

The Sixth Amendment provides that a criminal defendant shall "have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for determining whether a criminal defendant was denied that right. "To prevail on a claim of ineffective assistance of counsel, a convicted defendant must demonstrate that: (1) counsel's performance 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rosas v. Artus*, No. 05 Civ. 8440 (RJS), 2013 WL 499610, at *4 (S.D.N.Y. Jan. 29, 2013) (quoting *Strickland*, 466 U.S. at 688, 694). Further "[t]he law is clear that a petitioner challenging his conviction on the grounds of ineffective assistance of counsel '[bears] the burden of proving his claim.'" *Johnson v. United States*, No. 11 Cr. 487 (RJS), 2018 WL 4625799, at *3 (S.D.N.Y. Sept. 26, 2018) (quoting *Chang*, 250 F.3d at 86).

While assessing whether counsel's performance fell below an objective standard of reasonableness, the Court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). In determining whether counsel's failure to alert his client to a particular possible defense falls below an objective standard of reasonableness, the Court must look to the likelihood that that defense would succeed. *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (holding that a failure of counsel to advise his client of an available defense during plea discussions did not fall below the objective standard of reasonableness because the defense was unlikely to succeed and "would have exposed [the defendant] to significant additional punishment while only providing the potential for a reduction in prison time relative to the plea").

To satisfy the second *Strickland* prong of prejudice, a defendant who pleaded guilty must establish that he would have gone to trial if not for defense counsel's alleged ineffectiveness. *See Agramonte v. United States*, No. 15 Cr. 176 (KMK), 2020 WL 1445651, at *6 (S.D.N.Y. Mar. 25, 2020) (citing *United States v. Arteca*, 411 F.2d 315, 320 (2d Cir. 2005)). The "assessment of whether the defendant would have gone to trial but for counsel's errors 'will depend largely on whether the affirmative defense likely would have succeeded.'" *Panuccio*, 927 F.2d at 109 (quoting *Hill*, 474 U.S. at 59). Moreover, "this prong of the inquiry is not satisfied merely by [defendant's] testimony that he would have gone to trial had he known of the defense . . . since a defendant's testimony after the fact 'suffers from obvious credibility problems.'" *Id.* (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988)).

7

Because, as discussed *infra*, Valles pleaded guilty and now claims that his counsel was ineffective for failing to inform him of various "defenses" he might have pursued at trial instead of entering a guilty plea, resolving either prong of Valles's ineffective assistance claim requires assessing the merit of those potential "defenses."

Valles asserts three grounds of ineffective assistance, as discussed *infra*. In claiming resulting prejudice, Valles relies only on his own statements that he would have gone to trial had he known of any of these grounds at the time of his September 13, 2019 guilty plea. As such statements alone are insufficient to demonstrate prejudice, *Panuccio*, 927 F.2d at 109, the Court considers whether any of the defenses or arguments not pursued were viable. For reasons that follow, the Court determines that none of Valles's claimed available defenses were tenable, and that any suppression motion would have been unlikely to succeed or would not have been dispositive. Accordingly, Valles has not established that even if he had been informed of these grounds to challenge his culpability, he would have opted to proceed to trial.[4]

## 1.    Legal Defenses

Valles's first two asserted grounds of ineffective assistance point to legal arguments challenging the viability of the SORNA charge. The first seems to suggest that the statute's delegation of authority to the Attorney General to determine the applicability of the statute to offenders convicted before its enactment was an unconstitutional delegation of congressional power. As to the second, Valles similarly contends that he should not have been subject to SORNA

---

[4] Because ultimately it does not affect the outcome of this petition, the Court assumes throughout this Opinion and Order that Valles's attorneys in fact did not inform him of the defenses as Valles claims. There is good reason to doubt this position, at least as to Valles's first asserted ground, as his reply brief acknowledges that he and his counsel discussed *Gundy v. United States*, 139 S. Ct. 2116 (2019). Reply at 5 (contending that one of his attorneys "(on July 31, 2019), stated, after [Valles] inquired about *Gundy* and a defense strategy, 'unless you can change the law, there is nothing we can do,'" and that his other attorney "agreed").

given the date of his conduct that gave rise to his conviction under 18 U.S.C. § 2250. Both defenses, if asserted, would have lacked merit—and in fact are foreclosed by Supreme Court precedent—and thus provide no basis to find ineffective assistance.

### a.    Appeal Based on the Constitutionality of SORNA

First, Valles argues that "it was incumbent upon legal counsel to advise [Valles] not to plead guilty when going to trial left upon a reserved, exceptional affirmative defense during those proceedings, and upon appeals in order to request certiorari for consideration of a final opinion to the question." Motion at 17. The "question" to which he refers is "whether 34 U.S.C. § 20913(d) violates the separation-of-powers clause of the Constitution," *id.*, a position embraced by the dissent in *Gundy*. *See Gundy*, 139 S. Ct. at 2131-48 (Gorsuch, J., dissenting). Section 20913 is a provision of SORNA that imposes the statute's sex offender registration requirements, and section 20913(d) in particular grants the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with" the initial registration requirements. 34 U.S.C. § 20913(d). Valles argues that had he known of this "defense" of challenging the constitutionality of section 20913(d), he would not have pleaded guilty, but instead would have proceeded to trial and, if convicted, would have raised the issue on appeal to the Second Circuit and then to the Supreme Court. Motion at 17.

The Supreme Court decided *Gundy* on June 20, 2019, less than three months before Valles's guilty plea before Judge Pauley. At issue in *Gundy* was whether the nondelegation doctrine—which prevents Congress from transferring its legislative power to another branch—renders 34 U.S.C. § 20913(d) unconstitutional. *Gundy*, 139 S. Ct. at 2121; *see also* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States,

which shall consist of a Senate and House of Representatives."). Justice Elena Kagan, writing the plurality opinion, noted that the Court has "held, time and again, that a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Gundy*, 139 S. Ct. at 2123 (internal quotation marks and brackets omitted). Applying this standard, Justice Kagan concluded that the delegation in section 20913(d) passes constitutional muster. *Id.* at 2129-30. Justice Alito, concurring, expressed an interest in revisiting the Court's approach to the nondelegation doctrine in the appropriate case, but voted to affirm because he could not conclude that SORNA lacks a discernible standard. *Id.* at 2130-31 (Alito, J., concurring).

To have secured an acquittal on the ground that SORNA is an unconstitutional delegation of congressional power, Valles would have needed to (following trial and appeal to the Second Circuit) obtain a writ of *certiorari* from the Supreme Court and then prevail in that forum, an outcome that would have required the Court to reverse direction immediately after upholding the constitutionality of SORNA in *Gundy*. And even in the unlikely event that the Supreme Court would have granted *certiorari* so soon after deciding this very issue, this Court cannot deem a defense likely to prevail when it relies on a legal conclusion at odds with current Supreme Court law. The failure to warn a client of a meritless defense is not ineffective assistance. The Court therefore determines that any failure of counsel to inform Valles of the possibility of challenging SORNA's constitutionality did not fall below an objective standard of reasonableness, and additionally determines that Valles has not shown prejudice as he cannot credibly claim that he would have gone to trial had he known of the possibility of such a forlorn appeal, particularly where it may have caused him to lose the sentencing benefit for accepting responsibility.

**b.    Appeal on the Basis of *Reynolds***

Second, Valles argues that counsel failed to advise him "of an affirmative defense to challenge on direct attack the Government's position courtesy of *Reynolds* [*v. United States*, 565 U.S. 432] (2012) and *Mattix* (2012)[5], which—in concert—provide no pre-SORNA subject can be punished for violations that occurred before the Government (Attorney General of the United States) issued retroactivity rules made effective on 01 August 2008." Motion at 18. Based on Valles's reply brief, he seems to argue that, because he began traveling interstate after his release from custody in Utah in 2006, the conduct underlying his conviction began in 2006 and thus constitutes a violation occurring before the Attorney General issued retroactivity rules in 2008. Reply at 32. Valles again insists that had he known of this "defense," he would have gone to trial rather than plead guilty. Motion at 18.

Any appeal based on Valles's apparent understanding of the import of *Reynolds* would have been meritless. As just discussed, SORNA grants the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction." 34 U.S.C. § 20913(d). At issue in *Reynolds* was whether SORNA's registration requirements applied to offenders convicted before SORNA's enactment in July 2006. *Reynolds*, 565 U.S. at 434. *Reynolds* held that SORNA's "registration requirements do not apply to pre-Act offenders until the Attorney General specifies that they do apply." *Id.* at 435. SORNA became applicable to pre-

---

[5] While not entirely clear, when referencing "*Mattix* (2012)," Valles seems to be referring to the Ninth Circuit's decision in *United States v. Mattix*, 694 F.3d 1082 (9th Cir. 2012). Because the court in *Mattix* merely reaffirmed the Ninth Circuit's prior holding that SORNA became retroactive on August 1, 2008 when the Attorney General's interpreting and implementing guidelines became final, *id.* (citing *United States v. Valverde*, 628 F.3d 1159 (9th Cir. 2010)), *Mattix* is of no help to Valles for reasons that follow.

Act offenders, like Valles, on August 1, 2008, thirty days after final guidelines promulgated by the Attorney General were published. *See Lewis*, 768 F.3d at 1095; *Gundy*, 804 F.3d at 143.

Valles does not appear to contest that he was subject to SORNA's registration requirements after August 1, 2008, and his registration obligation under SORNA continued for at least fifteen years after his release from state imprisonment in 2006. 34 U.S.C. § 20915(a)(1); *see also Lewis*, 768 F.3d at 1095 ("SORNA became retroactively applicable to pre-Act offenders in August of 2008."); *Gundy*, 804 F.3d at 148 (holding that the defendant who had committed a 2005 state offense was initially required to register under SORNA on August 1, 2008). At his change of plea hearing, Valles allocuted that he had resided in New York from July 2016 through May 2018, 9/23/19 Plea Hearing Tr. at 15:18-20, that he traveled across state lines to New York, *id.* 14:22-24, and that he failed to register or update his registration during that period, *id.* at 14:24-25. Upon the beginning of his residence in New York in July 2016, Valles was required to register. *See 34 U.S.C. § 20913(c) ("A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."). The Supreme Court's holding in *Reynolds* therefore would have provided no viable basis for Valles to challenge his conviction, and any failure of his counsel to advise him of *Reynolds* did not fall below an objectively reasonable standard. And here too, the failure of counsel to urge him to pursue such an argument, predicated on a mistaken legal theory, did not cause Valles any prejudice.

\* \* \*

In sum, even crediting Valles's contentions regarding advice he received, and did not receive, from his prior counsel, it is clear that counsel declined to inform Valles of futile legal

challenges that were foreclosed by Supreme Court precedent. Instead, defense counsel apparently made the tactical decision of seeking a quick resolution of this case, which resulted in Valles receiving credit against his Guidelines range for accepting responsibility and also ultimately led to a significantly below-Guidelines sentence. Counsel's decision to proceed in this manner rather than to inform Valles of those futile challenges was far from ineffective. Nor can Valles claim he was prejudiced by his attorney's conduct, as he cannot credibly state that he would have forsaken his guilty plea in order to pursue such a doomed strategy.

### 2.    Advice Concerning Motions to Suppress

Third and finally, Valles argues that his counsel failed to advise him that he could have moved to suppress a self-incriminating statement that he made to law enforcement and the contents of two cell phones and other items seized from him at the time of arrest. Motion at 19. As to the statement, Valles claims that the arresting officers with the U.S. Marshals Service "omitted to state in their recitation of" his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), that Valles had "the 'right to have an attorney present during [any] questioning,'" Motion at 18 (alteration in original), and further contends his attorney failed to advise him "that case law . . . established ample grounds to suppress and object to the use and admission of an 'audiovisual' recording" of his post-arrest interrogation, *id.* As for the evidence recovered at his arrest, Valles claims that the items were unlawfully seized and that his counsel failed to advise him that a warrant would be required for law enforcement to inspect their contents. *Id.*

When bringing an ineffective assistance of counsel claim for failure to seek suppression of evidence, "*Strickland* requires that a [petitioner] show that: (1) a competent attorney would have made the motion; (2) the suppression motion would have been successful; and (3) the outcome of the proceeding would have been different absent the excludable evidence." *Watson v. Crowley*, No. 07 Civ. 1111 (RJS) (RLE), 2011 WL 4639814, at *4 (S.D.N.Y. May 10, 2011), *report and*

13

*recommendation adopted by* 2011 WL 4639812 (S.D.N.Y. Oct. 6, 2011). Valles cannot make this

showing with respect to either piece of evidence.

Starting with his attorney's failure to move to suppress his post-arrest statement, Valles

contends that the arresting officers violated his *Miranda* rights because they "omitted to state in

their recitation of *Miranda* to [Valles] the 'right to have an attorney present during [any]

interrogation.'" Motion at 19 (second alteration in original). Valles's motion also references a

video of his post-arrest statement. *See id.* That video, however, clearly contradicts his claim that

he was not informed of his right to have counsel present at his questioning, as it reveals that a law

enforcement officer advised Valles:

> Before we ask you any questions, it is my duty to advise you of your rights. You
> have the right to remain silent. Anything you say can and will be used against you
> in a criminal proceeding. *You have the right to talk to a lawyer for advice before
> we ask you any questions and . . . have him with you during questioning.* If you
> cannot afford a lawyer one will be appointed for you if you wish before any
> questioning begins. If you decide to answer questions now without a lawyer
> present, you still have the right to stop answering at any time. You also have the
> right to stop answering at any time until you talk to a lawyer.

Opposition, Exh. A at 4:15-44 (emphasis added). Valles then confirmed that he understood his

rights and was willing to speak with the officer. *Id.* at 4:44-5:03. Further, to the extent that Valles's

citations to caselaw that he believes support suppression of the video of that interview—

specifically, *Arizona v. Fulminante*, 499 US. 279 (1991), *Campos v. Stone*, 201 F. Supp. 3d 1083

(N.D. Cal. 2016), *Colorado v. Connelly*, 479 U.S. 157 (1986), *Frazier v. Cupp*, 394 U.S. 731

(1969), *Lego v. Twomey*, 404 U.S. 477 (1972), *Moran v. Burbine*, 475 U.S. 412 (1986),

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and *Miranda*, Motion at 19—imply that his

attorney should have argued that his post-arrest statement was coerced, Valles presents no

argument justifying that conclusion other than his flawed claim that he was not informed of his

right to counsel. Nor is there any indication of coercion in the video itself.

Given that the recording of Valles's post-arrest interview makes clear that he was advised of his right to have an attorney present for any law enforcement questioning and confirmed that he understood that right, Valles has not shown either that a competent attorney would have advised him to move to suppress that statement, or that such a motion would have had any chance of success. Because such a motion to suppress was sure to fail, Valles's attorney was not required to advise him of the possibility of filing one and Valles cannot credibly claim any prejudice from his attorney's failure to do so.

Valles's claim that his attorney rendered ineffective assistance by not seeking suppression of the two phones and other property seized from him at the time of his arrest also fails, but for different reasons. As an initial matter, Valles does not contend that he would have proceeded to trial had his counsel sought suppression of this evidence. Moreover, even if such a motion to suppress had been made and been successful in whole or part, the question then becomes whether a successful motion would have altered Valles's decision to plead guilty at the time. The Government, however, represents in opposing Valles's motion that its anticipated trial proof against Valles did not include any of the evidence recovered at the time of his arrest, Opposition at 16, and similarly suggested at the time of Valles's guilty plea that it did not intend to offer that evidence at any trial, *see* 9/13/19 Plea Hearing Tr. at 16:5-12 (the Assistant United States Attorney responding to Judge Pauley's request that she summarize the prosecution's evidence against Valles and not mentioning the phones or other items seized at the time of his arrest).

This is not surprising given the relatively limited and straightforward elements of a violation of 18 U.S.C. § 2250, the sole crime that Valles was charged with committing. To establish Valles's guilt of this offense, the Government needed to prove beyond a reasonable doubt three elements: (1) Valles was required to register under SORNA; (2) Valles traveled in interstate

15

or foreign commerce; and (3) Valles knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250. Notably, when asked by Judge Pauley at Valles's plea hearing to summarize the Government's evidence, the Assistant United States Attorney did not mention any of the items seized at the time of Valles's arrest. *See* 9/13/19 Plea Hearing Tr. at 16:5-12. Rather, the Assistant United States Attorney identified three categories of evidence that would appear to sufficiently meet each of the elements to establish Valles's guilt for violating 18 U.S.C. § 2250: (1) judicial documents and Valles's criminal history establishing his prior commission of a sex offense requiring his registration under SORNA[6]; (2) testimony from lay and law enforcement witnesses establishing that Valles resided in multiple states, including in the Southern District of New York; and (3) Valles's post-arrest statement. *Id.* As such, suppression of the items seized from Valles at the time of his arrest—which the prosecutors apparently did not intend to rely on at trial and would not have been needed to establish Valles's guilt—likely would have had no bearing on the outcome of this case. Indeed, Valles does not contend that the Government's evidence against him, after taking out the evidence recovered at the time of his arrest, was insufficient for a conviction such that he would not have pled guilty. As Valles therefore cannot show prejudice as to any failure to advise him regarding such a suppression motion, this ground for ineffective assistance fails as well.

## IV. Conclusion

For the aforementioned reasons, Valles's motion is denied in its entirety. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 19 and to close the

---

[6] The Government further alleged in the criminal complaint, which was sworn by a Deputy United States Marshal, that, on or about July 10, 2006, around the time of Valles's release from state custody, Valles signed a Utah State Sex Offender Registration Form, in which he confirmed that he had been notified of his responsibility to register as a sex offender. Dkt. 1 ¶ 3(c).

case with docket number 20 Civ. 7835.  A certificate of appealability shall not be granted, because

Valles has not made a substantial showing of a denial of a federal right.  *See Hoffler v. Bezio*, 726

F.3d 144, 154 (2d Cir. 2013).

      SO ORDERED.

Dated: July 10, 2023
      New York, New York

                                          JOHN P. CRONAN
                                United States District Judge

MIME-Version:1.0
From:NYSD_ECF_Pool@nysd.uscourts.gov
To:CourtMail@localhost.localdomain

Message-Id:<29765352@nysd.uscourts.gov>
Subject:Activity in Case 1:20-cv-07835-JPC-SDA Valles v. United States of Americ
a Memorandum & Opinion
Content-Type: text/plain
This is an automatic e-mail message generated by the CM/ECF system.
Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

U.S. District Court
Southern District of New York

Notice of Electronic Filing
The following transaction was entered  on 7/10/2023 5:24 PM EDT and filed
on 7/10/2023

Case Name: Valles v. United States of
America
Case Number: 1:20-cv-07835-JPC-SDA https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.
pl?544851

Filer:

Document Number: 21

Copy the URL address from the line below into the location bar
of your Web browser to view the document:
https://ecf.nysd.uscourts.gov/doc1/127133668991?caseid=544851&de_seq_num=83&magi
c_num=MAGIC

Docket Text:
OPINION AND ORDER For the aforementioned
reasons, Valles's motion is denied in  its entirety. The Clerk of Court
is respectfully directed to close the motion  pending at Docket Number 19
and to close the case with docket number 20 Civ.  7835. A certificate of
appealability shall not be granted, because Valles has  not made a substantial
showing of a denial of a federal right. See Hoffler v.  Bezio, 726 F.3d 144,
154 (2d Cir. 2013). SO ORDERED.   (Signed by Judge John P. Cronan on 7/10/2023)
  (jca)

1:20-cv-07835-JPC-SDA Notice has been electronically mailed to:

1:20-cv-07835-JPC-SDA Notice has been delivered by other means to:
Andrew Valles
Inmate No. BJ6191
California Institution for Men
B-BH-343
P.O. Box 441
Chino,  CA 91708

The following document(s) are associated with this transaction:
Document description: Main Document
 Original filename: n/a
 Electronic document Stamp:
 [STAMP dcecfStamp_ID=1008691343 [Date=7/10/2023] [FileNumber=29765351-0]
[67484e21d89d9420afa655d8d33d07f7cda0f8226a782d5ffdd51a7ce3178303ee761ba5a8ad623
2b7e549c2f1d5b9bdea21b8103bdf57707122fe735c9233f1]]

Exhibit   5 - B

**U.S. Department of Justice**
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007-1703

SARAH MORTAZAVI
Assistant U.S. Attorney

Andrew Valles
CDCR # B36(9)
P.O. Box 441
Chino, CA
91708
C-1-212-U

91708-044141

received on
June 2023

*A. Valles*

NEW YORK NY 00
22 JUN 2023 PM 6

FIRST CLASS

US OFFICIAL MAIL PENALTY FOR PRIVAT
**US POSTAGE** AND PITNE
ZIP 10007
02 4W
0001131775 JUN 2
**$ 000**

CIM MAILROOM
JUN 27 2023
FAC-B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 20, 2023

**BY ECF**
The Honorable John P. Cronan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   **United States v. Andrew Valles**, 19 Cr. 672 (JPC); 20 Civ. 7835 (JPC)

Dear Judge Cronan:

The Government writes pursuant to the Court's June 1, 2023 Order, (Dkt. 37), directing the parties to file letter-briefs addressing whether the Court has jurisdiction to adjudicate Andrew Valles's September 23, 2020 28 U.S.C. § 2255 petition (the "Petition"), "given the fact that Defendant is not yet in federal custody." *Id.* The defendant's initial habeas petition before this Court seeking to vacate his conviction under the Sex Offender Registration and Notification Act ("SORNA") on the basis of ineffective assistance of counsel was docketed on September 23, 2020. (Dkt. 19). The Government filed its opposition on November 24, 2020. (Dkt. 21). The defendant filed his reply on April 27, 2020. (Dkt. 28). For the reasons outlined herein, the Government submits that the Court has jurisdiction to resolve the  Petition, irrespective of the fact that the defendant is currently in state custody. Consequently, the motion is ripe for adjudication.

<u>Legal Background and Discussion</u>

"At one time the Supreme Court took a restrictive view of the 'in custody' requirement of section 2241(c)(3). Thus, in *McNally v. Hill,* 293 U.S. 131 (1934), the Court ruled that a prisoner serving the first of two consecutive federal sentences could not challenge the second sentence. However, the Court subsequently reconsidered *McNally* and overruled it in *Peyton v. Rowe,* 391 U.S. 54 (1968)." *Frazier v. Wilkinson,* 842 F.2d 42, 44 (2d Cir. 1988). "In *Peyton* the Court permitted prisoners serving the first of two consecutive sentences imposed by the State of Virginia to challenge the second sentence." *Id.* (citing *Peyton v. Rowe,* 391 U.S. 54 (1968)). The Second Circuit has recognized *Peyton*'s expansive impact on the interpretation of the "custody" requirement:

> Until the decision in *Peyton,* the general rule was that federal
> jurisdiction would attach only if the applicant was in actual
> physical custody pursuant to and resulting from the conviction he
> seeks to set aside as having been unconstitutionally obtained.
> However, Peyton . . . extended this narrow concept of the 'in
> custody' requirement so that a state prisoner serving the prior of

Page 2

> two consecutive or successive sentences imposed by the same state
> is 'in custody' under any one of them for the purpose of having
> standing to challenge by a federal habeas corpus proceeding either
> of the convictions.

*U.S. ex rel. Myers v. Smith*, 444 F.2d 75, 76–77 (2d Cir. 1971). Following *Peyton*, the Second Circuit further expanded this principle, holding that a defendant may challenge an anticipated sentence, even if not "presently serving [the] sentence" that the defendant seeks to challenge, because "[t]he writ may be employed to contest the validity of future as well as present restraints." *U. S. ex rel. Meadows v. State of N. Y.*, 426 F.2d 1176, 1179 (2d Cir. 1970); *see also Kassir v. United States*, 3 F.4th 556, 567 n.59 (2d Cir. 2021) (construing *Peyton* as "holding that prisoner may challenge consecutive sentence he is not yet serving"). The Second Circuit has thus recognized:

> It is well established that although Meadows is not presently
> serving a sentence imposed as a result of that conviction he is not
> foreclosed from challenging it in habeas corpus proceedings. . . .
> Although it is true that the two consecutive sentences of the
> petitioner in Peyton had been imposed by the same jurisdiction and
> Meadows seeks to challenge a state conviction while serving a
> federal sentence, we cannot agree with the district judge that this is
> a distinction which forecloses us from applying to this case the
> clearly stated rule and rationale announced in *Peyton. Meadows'*
> interest in securing prompt adjudication of his constitutional claims
> is just as compelling as was Rowe's. Whether consecutive
> sentences have been imposed by the same or different jurisdictions
> does not affect the wisdom of a rule which requires conducting
> "meaningful factual (inquiries) * * * before memories and records
> grow stale."

*Meadows*, 426 F.2d at 1179 (citing *Peyton*, 391 U.S. at 65); *see also Myers*, 444 F.2d at 76–77 (collecting cases) ("[N]ow state prisoners attacking a sentence imposed by one jurisdiction while incarcerated in another come within 2241(c)(3) if a detainer has been lodged with the custodian of the applicant."). Furthermore, "[s]ince *Peyton v. Rowe*, courts of appeals have consistently interpreted the 'custody' language of § 2255 within the same context of the new scope and meaning given to the writ of habeas corpus by that decision." *Jackson v. United States*, 423 F.2d 1146, 1149 (8th Cir. 1970) (citing cases).

To that end, "courts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence and thus are subject to the § 2255 statute of limitations." *Green v. United States*, 415 F. Supp. 3d

Page 3

338, 341 (W.D.N.Y. 2019) (citing *Perry v. Warden Fort DIX FCI*, 609 F. App'x 725, 727 (3d Cir. 2015)). "The fact that [a defendant] is in state custody, rather than federal custody, is irrelevant. A petitioner . . . whose federal sentence is to be served upon completion of a state sentence he is still serving and who has not as yet commenced his federal sentence, satisfies the custody requirements of Section 2255 governing motions to set aside or correct a federal sentence." *United States v. Mercedes*, No. 90 CR. 450 (RWS), 1997 WL 122785, at *2 (S.D.N.Y. Mar. 17, 1997) (citing *Collins v. United States,* 418 F.Supp. 577, 579 (E.D.N.Y. 1976); *Ward v. Knoblock,* 738 F.2d 134, 139 (6th Cir. 1984); *Simmons v. United States,* 437 F.2d 156, 158–59 (5th Cir. 1971); *Desmond v. United States Bd. of Parole,* 397 F.2d 386, 389 (1st Cir. 1968)); *see also Collins,* 418 F.Supp. at 579 ("Although the Second Circuit has yet to express its opinion as to this issue it has held, in a section 2241 habeas corpus proceeding, that a prisoner in federal custody may attack a State sentence yet to be commenced. . . . We agree that the logical extension of the Supreme Court's holding in Peyton points to the conclusion that petitioners are not barred from seeking relief from this Court prior to the completion of their State sentences.").

Accordingly, the majority of Circuit Courts have recognized a District Court's jurisdiction to entertain § 2255 petitions challenging federal sentences even if the petitioner-defendant is in state custody serving a state sentence at the time the petition is filed. *Ospina v. United States*, 386 F.3d 750, 752 (6th Cir. 2004) ("A prisoner is in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him." (internal citation omitted) (collecting cases)); *Simmons,* 437 F.2d at 158-159 (Section 2255 petitions are "available to a prisoner in state custody attacking a federal sentence scheduled to be served in the future," and finding "no reason to restrict section 2255 to prisoners actually in federal custody" in context of analyzing one-year limitations period for filing petition); *Jackson,* 423 F.2d at 1149 ("[W]e think the petitioner, a state prisoner, may challenge his federal sentence although he has not yet commenced to serve that sentence."); *Desmond,* 397 F.2d at 389 ("It does not seem to us a significant stretch to say that he may attack a federal sentence, yet to be served, while defendant is in custody completing a state sentence. The same principles which dictated Peyton v. Rowe seem to us to support jurisdiction here. To be sure, defendant is not physically 'in custody under sentence of a court established by Act of Congress', but if custody is to be construed as single and continuous, we may join the courts as well. There is just as much reason to resolve the legality of resumed incarceration under an existing sentence before such resumption occurs as to resolve the legality of continued incarceration under a consecutive sentence yet to commence.").

Page 4

As set forth above, the weight of authority supports this Court's exercise of jurisdiction in the instant matter. That Valles is in state—not federal—custody does not preclude this Court's resolution of Valles's pending Petition. To the contrary, the Supreme Court and the Second Circuit have expansively applied 28 U.S.C. § 2255 to quickly resolve petitions. *See Grimes*, 607 F.2d at 8 (citing *Peyton*, 391 U.S. at 66); *see also Simmons*, 437 F.2d at 158 (recognizing "the undesirability of postponing determination of" 2255) petitions). The *Peyton* Court specifically emphasized "that the habeas corpus statute should be construed liberally because it is a remedial statute . . . ." *Grimes*, 607 F.2d at 8. In light of the foregoing, this court has jurisdiction to resolve the defendant's Petition.

<u>Conclusion</u>

Wherefore, the Government respectfully contends that the Court has jurisdiction to adjudicate the defendant's pending § 2255. As argued in prior papers, the Government respectfully submits that the defendant's Petition is meritless and should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

by:  _____/s/_____
     Sarah Mortazavi
     Assistant United States Attorney
     (212) 637-2520

cc:   Andrew Valles    (By mail to the California Institution for Men
                        P.O. Box 3100, Chino, CA 91708 and P.O. Box 441, Chino, CA 91708;
                        CDCR# BJ6191)

A. Valles
CDCR No. BJ6191
Fed. Reg. No. 86994-054
CIM (C-A-212 4B)
P.O. Box 500
Chino, CA 91708

STATE PRISON

US POSTAGE PITNEY BOWES
ZIP 91710
02 4W
0000341619 AUG 01 2023
$ 012.55

RECEIVED
AUG 03 2023
CLERK'S OFFICE
S.D.N.Y.

Pro Se

RJ


CONFIDENTIAL
Legal / court mail

RECEIVED
AUG - 4 2023
PRO SE OFFICE

Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
New York, New York
10007

USMp
SDN